# CHEVY CHASE LAND COMPANY *v.* POOLE.

BUILDING RESTRICTIONS; ENFORCEMENT.

The owner of a tract of land who by plats, signs, advertisements, and
contracts leads purchasers of lots thereon to understand that every
part thereof is to be used exclusively for homes, and cannot be used
for mercantile purposes, will be enjoined from erecting a store
upon an unsold parcel thereof.    (Citing *McNeil* v. *Gary*, 40 App.
D. C. 397.)

No. 3163.  Submitted January 7, 1919.  Decided March 3, 1919.

HEARING on an appeal by the defendants from a decree in
the Supreme Court of the District of Columbia, sitting as an
equity court, in a suit to enjoin the erection of a store building.
                                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of
the District enjoining appellants, the Chevy Chase Land Company of Montgomery County, Maryland, a corporation, and
Sanitary Grocery Company, incorporated, from erecting a store
building on Connecticut avenue in Chevy Chase, District of
Columbia, upon parcel 38/3 (38 over 3), appellees,' Thomas A.
Poole and Euphemia P. Poole, dwelling being located on lot
37, diagonally across the avenue.

We here insert a plat showing the relative locations of the
dwelling and proposed store building:

NOTE.—The question as to oral or implied building restrictions as to
parcels retained by the grantor is discussed in a note in 45 L.R.A.(N.S.)
962.  As to who may enforce restrictive covenant or agreement as to use
of property, see note in 37 L.R.A.(N.S.) 12.

For several years prior to 1909 the appellant Chevy Chase Land Company, hereinafter referred to as the Land Company, had been engaged in the business of purchasing, subdividing, and placing upon the market for residential sites tracts of land in Chevy Chase, Maryland, and Chevy Chase, District of Columbia. Thomas J. Fisher & Company was the exclusive agent of the Land Company in handling these properties. For many years the business of the Land Company was conducted in the office of Fisher & Company. Finally, however, the two companies occupied adjoining offices in the Union Trust Building, this city. The president of Fisher & Company was vice president of the Land Company and, as testified by him, "probably has more to do with its affairs than anybody else." The treasurer of the Land Company is vice president of Fisher & Company. In short, the relations between the two companies have been and are extremely close. A Mr. Harold E. Doyle, during the period in question, has been "sales manager" in charge of the sales department of Fisher & Company, and also secretary of that company. As such sales manager, he has had charge of the sales of the Land Company in Chevy Chase.

During 1909 the appellees, being desirous of purchasing a lot upon which to build a home, were attracted by signs and advertisements relating to property of the Land Company in Chevy Chase, for sale by Fisher & Company. On May 1st of that year there appeared in the Washington Evening Star an advertisement, which it is admitted was authorized and paid for by the Land Company, containing the following:

Reasonable Restrictions Govern Building Operations in Beautiful Chevy Chase.

It is by reason of these restrictions that Chevy Chase is and always will be the ideal suburban home section of Washington, that Chevy Chase property will continue to enhance in value, so that whether you buy in Chevy Chase for investment or to build, your interests are safeguarded.

Read These Restrictions and You Will Realize How Reasonable They Really Are.

In Chevy Chase, D. C.—

1. No apartment houses to be erected.

2. No stable to be erected except on rear end of lot.

3. Property shall not be used for manufacturing or mercantile purposes.

4. A building line established 15 feet back from the street line or lines on east and west streets shall be observed.

5. Only one dwelling will be allowed on each 50-foot front lot (no rows) on Connecticut avenue, and must cost not less than $5,000. Houses on other streets must cost not less than $3,500.

Appellees communicated with Fisher & Company, were taken out to Chevy Chase by an agent of that company, and were shown lot 37 and a plat of the Land Company's holdings in the vicinity which included parcel 38 over 3. They inquired concerning that parcel, and there is evidence tending to show that they were informed that it was subject to the same restrictions that applied to lot 37. That there might be no mistake, appellees visited the office of Fisher & Company, where they saw Mr. Doyle, who, they testified, confirmed the statements theretofore made to them. Thereafter, on October 2, 1909, they entered into a contract for the purchase of lot 37. This contract provides in part as follows:

Washington, D. C.,
October 2, 1909.

Received of Dr. Thomas A. Poole a deposit of $100 to be applied as a part payment in purchase of lot 37, block 1865, Chevy Chase, D. C., sold for $4,000 on the following terms: And then the deferred terms of payment—Sale made subject to owner's approval;

Seller to give the usual special warranty deed, which shall contain covenants as to character, cost and use of premises

substantially as follows: (1) No apartment houses to be erected. (2) No stable to be erected except on rear end of lot. (3) Property shall not be used for manufacturing or mercantile purposes. (4) A building line established 15 feet back from the street line of lots on east and west streets shall be observed. (5) Only one building will be allowed on each 50-foot front lot (no rows) on Connecticut avenue, and must cost not less than $5,000.

Houses on other streets must cost not less than $3,500. All these conditions to run with the land and purchaser to sign deed evidencing intention to be bound thereby.     *     *     *

[Signed]     Thomas J. Fisher & Company, Inc.

Agents for the Chevy Chase Land Company.

Approved by Thomas A. Poole, Purchaser.

Harold E. Doyle,

Attorney for Owner.

Subsequently, on October 30th, the lot was conveyed to appellees by a deed which was signed by the grantors and grantees. The restrictions here involved were not repeated in the deed. It is conceded that contracts for the sale of all land of the Land Company in Chevy Chase contained restrictions similar to those in the contract of appellees. More specifically, it is conceded that all contracts contained the restrictions against use of the property to be conveyed "for manufacturing or mercantile purposes."

The Land Company contends that, "as a preliminary step to the sale of particular parcels," they must have been subdivided, and that until subdivision took place they were not included in any general plan or scheme of development; that parcel 38 over 3 had not been subdivided; that Fisher & Company had no authority to bind the Land Company as to restrictions on this parcel; and that, in any event, restrictions upon real property cannot be created by parol.

The president of Fisher & Company, the active head of the Land Company, testified in effect that parcel 38 over 3 and the land on the opposite side of the avenue originally belonged to

the same tract and were acquired by the Land Company at the same time. Mr. Doyle, testifying for the defendant, stated that a "subdivision does not mean anything very definite. I (he) took it to mean all the Chevy Chase properties * * * " He admitted that he had attempted to get the owner of square 860, south of parcel 38 over 3, to agree to a restriction against stores in that subdivision, although he denied that similar restrictions were to apply to parcel 38 over 3. Neither this witness nor any other representative of the Land Company ever informed any prospective purchaser of the Chevy Chase, District of Columbia, lots that parcel 38 over 3 was not to be restricted as the other parcels.

*Mr. Jackson H. Ralston* and *Mr. William E. Richardson,* for the appellants:

1. No clear, distinct, unequivocal promise was ever made by or on behalf of the Land Company to the plaintiffs below to the effect that any restriction as to stores should exist on the property west of Connecticut avenue.

2. No power ever existed in Doyle or any other agent of the Chevy Chase Land Company to promise any such restriction, or any restriction of any kind.

3. No power exists, in the District of Columbia, in any real estate agent to promise that restrictions shall be made, except the authority so to do be put in writing, signed by the principal, and such is not the present case.

4. By ratification the principal's land may not be charged by the making of an authorized oral promise, when, as in this case, such promise was not communicated to the principal at the time of the supposed ratification.

5. The form of the contract signed by the plaintiffs below, when they purchased their lot, showed the entire absence of any authority other than such as was expressed in the printed words of the contract.

6. Under no circumstances in the District of Columbia can

restrictions upon land, particularly the land not the immediate subject of conveyance, be created by parol.

*Bell* v. *Cunningham*, 3 Pet. 69, 81; *Bennecke* v. *Connecticut Mut.* 105 U. S. 355, 26 L. ed. 992; *Camden F. Ins. Asso.* v. *Jones*, 53 N. J. L. 189; *Carr* v. *Dooley*, 119 Mass. 294; *Cooley* v. *Perrine*, 12 Vroom, 322, 32 Am. Rep. 210; *Coombs* v. *Scott*, 12 Allen, 493; *Copeland* v. *Merchants Ins. Co.* 6 Pick. 203; *Durkin* v. *Cobleigh* (Mass.) 30 N. E. 474; *Edwards* v. *Dooley*, 120 N. Y. 540; *Fred Miller Brewing Co.* v. *Jones*, 190 Ill. App. 169; *Hamilton* v. *Cutts*, 6 Mackey, 208; *Hazeltine* v. *Miller*, 44 Me. 177; *Horsfall* v. *Fauntleroy*, 10 Barn. & C. 755; *Gosselin* v. *Chicago*, 103 Ill. 623; *Gulick* v. *Grover*, 4 Vroom, 463; *Jenkins* v. *Lock*, 3 App. D. C. 485; *Jones* v. *Holliday*, 2 App. D. C. 279; *McClurg* v. *Futer*, 52 Pa. Super. Ct. 485; *Mannix* v. *Hildreth*, 2 App. D. C. 259; *Mochael* v. *Hoffstead*, 98 N. W. 1078; *National Cash Register Co.* v. *Brainson*, 90 Atl. 645; *National Lumber Box Co.* v. *Gray's Harbor Com. Co.* 127 Pac. 577; *Owings* v. *Hull*, 9 Pet. 607, 9 L. ed. 246; *Oxwell Acetylene Co.* v. *Hughes*, 126 Md. 437, L.R.A.1916B, 751; *Powell* v. *Satchell* [1903] 2 Ch. 212, 89 L. T. N. S. 267, 73 L. J. Ch. N. S. 20; *Richmond* v. *Greeley*, 38 Iowa, 666; *Richter* v. *Irwin*, 28 Ind. 26; *Ryan* v. *McGee*, 2 Mackey, 17; *Samson* v. *Beale*, 27 Wash. 557; *Smith* v. *Tracy*, 56 N. Y. 79; *Sprague* v. *Kimball*, 213 Mass. 380, 45 L.R.A. (N.S.) 962; *Springer* v. *City Bank & T. Co.* 149 Pac. 252; *Terry* v. *International Cotton Co.* 138 Ga. 656; *Thorndyke* v. *Godfrey*, 3 Greenleaf, 429; *Titus* v. *Phillips*, 3 C. E. Green, 541.

*Mr. E. F. Colladay* and *Mr. H. S. Barger*, for the appellees, in their brief cited:

*Allen* v. *Detroit*, 167 Mich. 464; *Anderson* v. *American Suburban Corp.* 155 N. C. 131, 71 S. E. 221, 36 L.R.A.(N.S.) 896; *Anderson* v. *Connelly*, 12 Wend. 279; *Anderson* v. *Crichter*, 11 Gill & J. (Md.) 450, 37 Am. Dec. 72; *Ayer* v. *Mfg. Co.* 147 Mass. 46, 16 N. E. 754; *Bank* v. *Berlin*, 33 W. L. R.

726; *Bank of Commerce* v. *Bright,* 77 Fed. 949; *Beasley* v. *T. & P. R. Co.* 191 U. S. 492; *Beck* v. *Allison,* 56 N. Y. 366; *Bimson* v. *Bullman,* 38 N. Y. S. 209; *Bolin* v. *Tyrol Invest. Co.* (Mo.) 200 S. W. 1059, L.R.A.1918C, 869; *Brennan* v. *Cochran,* 44 App. D. C. 322; *Brick* v. *Brick,* 98 U. S. 515; *Bronson* v. *Chappell,* 12 Wall. 681; *Carr* v. *Dooley,* 119 Mass. 274; *Case Mfg. Co.* v. *Soxman,* 138 U. S. 431; *Chemical Nat. Bank* v. *Wagner,* 93 Ky. 528; *Collins* v. *Cooper,* 65 Tex. 460; *Colonial Park Estates* v. *Massari,* 112 Md. 648; *Columbia College* v. *Thatcher,* 87 N. Y. 311; *Com.* v. *Hawkins,* 83 Ky. 246; *Crain* v. *First Nat. Bank,* 114 Ill. 516; *Davis* v. *Leicester,* 63 L. J. Ch. N. S. 440; *Dennis* v. *Wilson,* 107 Mass. 591; Devlin on Deeds, pp. 1907, 1951, 1953, 1955 & Sec. 340; *Doan* v. *Duncan,* 17 Ill. 272; *Drakely* v. *Gregg,* 8 Wall. 242; *Duester* v. *Alvin* (Or.) 145 Pac. 660; *Duke* v. *Markham,* 105 N. C. 131; *Durkin* v. *Cobleigh* (Mass.) 30 N. E. 474; *Fanning* v. *Cobb,* 20 Mo. App. 577; *Flynn* v. *New York, W. & B. R. Co.* 218 N. Y. 140; Fry, Specific Performance, pp. 48, 49, 415, 516; *Fusting* v. *Sullivan,* 42 Md. 162; *Ganderly* v. *Weckerly,* 220 Pa. 285; *Gilbert* v. *Peteler,* 38 Barb. 489; *Griggs* v. *Selden,* 58 Vt. 561; *Hall* v. *Solomon,* 61 Conn. 476; *Hartford L. & A. Ins. Co.* v. *Hayden,* 90 Ky. 39; *Hawley Furnace Co.* v. *Hooper,* 90 Md. 390; *Hemsley* v. *Marlborough House,* 68 N. J. Eq. 596; *Herold* v. *Columbia Invest. Co.* 72 N. J. Eq. 837; *Hines* v. *Willcox,* 96 Tenn. 163; *Hooper* v. *Mottman* (Tex.) 171 S. W. 270; *Hurst* v. *American Asso.* 105 Ky. 793; *Jackson* v. *Pike,* 9 Cow. 69; *Jeffery* v. *Bigelow,* 13 Wend. 518; Jones, Ev. Secs. 256, 356–358, 439, 453; *Julliard* v. *Chaffee,* 92 N. Y. 529; *Kennedy* v. *Maness,* 138 N. C. 35; *Kenton Ins. Co.* v. *Bowman,* 84 Ky. 446; *Kingsley* v. *Fitts,* 51 Vt. 415; *Kirkpatrick* v. *Peshine,* 24 N. J. Eq. 206; *Knapp* v. *Hall,* 20 N. Y. S. 42; *Lenning* v. *Ocean City Asso.* 41 N. J. Eq. 606; *Levine* v. *Carroll,* 121 Ill. App. 105; *Lewis* v. *Turnley,* 97 Tenn. 197; *Lowrence* v. *Woods* (Tex.) 118 S. W. 511; *Lynch* v. *Murphy,* 161 U. S. 247; *McBride* v. *Steinweden,* 72 Kan. 508; *McClure* v. *Oxford,* 94 U. S. 429; *McElroy* v. *British American Assur. Co.* (C. C. A.) 94 Fed. 991; *McKenzie* v.

*Childers,* 59 L. J. Ch. N. S. 188; *McNeill* v. *Gary,* 41 W. L. R.
325; *McQuiddy* v. *Ware,* 20 Wall. 14; *Manogue* v. *Bryant,* 15
App. D. C. 245, 27 W. L. R. 478; Mechem, Agency, Sec.
710; *Mechants Bank* v. *State Bank,* 10 Wall. 604; *Mosely* v.
*Morgan,* 141 Ky. 557; *O'Gallagher* v. *Lockhart,* 263 Ill. 489;
*Parker* v. *Nightingale,* 88 Mass. 341; *Paul* v. *Owing,* 32 Md.
402; *Peck* v. *Conway,* 119 Mass. 546; *Pierce* v. *Woodward,* 6
Pick. 206; *Piggott* v. *Stratton,* Johns, V. C. (Eng.) 341; Pom.
Eq. Jur. Sec. 1405; *Rackeman* v. *Riverbank Imp. Co.* 167 Mass
1, 57 Am. St. Rep. 427; *Re Birmingham Dist. Land Co.* 1
Ch. (Eng.) 342; *Reed* v. *Insurance Co.* 95 U. S. 32; *Richard-
son* v. *Traver,* 112 U. S. 423; *Riverbank Improv. Co.* v. *Chad-
wick* (Mass.) 117 N. E. 244, L.R.A.1918B, 55; *Rountree* v.
*Denson,* 59 Wis. 522; *Rowland* v. *Miller,* 139 N. Y. 93;
*Schermerhorn* v. *Bedell,* 148 N. Y. S. 896; *Schickhaus* v. *San-
ford,* 83 N. J. Eq. 454; *Security Invest. Co.* v. *Garrett,* 3 App.
D. C. 69, 22 W. L. R. 268; *Silberman* v. *Uhrlaub,* 102 N. Y.
S. 299; *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417;
*Smith* v. *Proctor,* 139 N. C. 314, 2 L.R.A.(N.S.) 172; *Spicer*
v. *Martin,* L. R. 14 App. Cas. 12; *Stearns* v. *Mullen,* 4 Gray,
151; Story, Agency, Sec. 17; *Stott* v. *Avery,* 156 Mich. 674;
*T. & P. R. Co.* v. *Marshall,* 136 U. S. 393; *Tallmadge* v. *East
River Bank,* 26 N. Y. 105; Tiffany, Land. & T. pp. 266, 371;
*Turney* v. *Shriver,* 269 Ill. 164; *Turner* v. *Howard,* 42 N. Y.
S. 335; *Weigman* v. *Kusel,* 270 Ill. 520; *Wheelock* v. *Moul-
ton,* 15 Vt. 519; *Wiley* v. *Stormont,* 38 App. D. C. 399; *Willis*
v. *Hulbert,* 117 Mass. 151; *Willoughby* v. *Lawrence,* 116 Ill.
11; *Winchell* v. *National Expr. Co.* 64 Vt. 15; *Wood* v. *Car-
penter,* 101 U. S. 14; *Wood* v. *Grayson,* 22 App. D. C. 432,
31 W. L. R. 663, 200 U. S. 257; *Wood* v. *Patterson,* 4 Md.
Ch. 339.

Mr. Justice Robb delivered the opinion of the Court:

The situation, then, amounts to this: The Land Company,
through Fisher & Company, extensively advertised its Chevy
Chase land as ideal sites for the building of homes.   It held

out to prospective purchasers that no manufacturing or mercantile business would be permitted. Appellees, relying upon these representations, opened negotiations for the purchase of one of these lots, were shown plats which indicated that parcel 38 over 3 belonged to the Land Company, were told that it did, and there is evidence that they were further informed that the usual restrictions would apply to that parcel. It is not contended that they were told anything to the contrary. Relying upon these representations, as of course they had a right to do, the contract of sale was entered into. The Land Company, therefore, having bound each purchaser of land in this vicinity to refrain from using these lots for manufacturing or mercantile purposes, now proposes to devote this parcel to the very use forbidden to the owners of the other parcels,—and upon the theory that it was not subdivided.

The plats, signs, advertisements, and contracts, to say nothing of the admissions, leave no room for doubt that purchasers of this Chevy Chase, District of Columbia, property had a right to understand, and did understand, that parcel 38 over 3 was included in the general scheme for the development and sale of property of the Land Company in that locality. In such circumstances, equity will intervene. The purchaser, having submitted to a burden upon his own land with the understanding that a similar burden is to be placed upon the remaining land of the grantor for the common benefit of all, will be relieved from an attempt by the grantor or third party with notice to depart from the general scheme. *McNeil* v. *Gary,* 40 App. D. C. 397, 46 L.R.A.(N.S.) 1113; *Hooper* v. *Lottman* (1914) — Tex. Civ. App. —, 171 S. W. 270; *Schermerhorn* v. *Bedell,* 163 App. Div. 445, 148 N. Y. Supp. 896, 221 N. Y. 536, 116 N. E. 1074; *Turner* v. *Howard,* 10 App. Div. 555, 42 N. Y. Supp. 336; *Tallmadge* v. *East River Bank,* 26 N. Y. 105; *Wiegman* v. *Kusel,* 270 Ill. 520, 110 N. E. 884; *Schickhaus* v. *Sanford,* 83 N. J. Eq. 454, 91 Atl. 878.

Appellants cite *Sprague* v. *Kimball,* 213 Mass. 380, 45 L.R.A.(N.S.) 962, 100 N. E. 622, Ann. Cas. 1914A, 431, as "on all fours with the present" case. We do not so under-

stand that case; for there "the agreement to restrict" the use of the property "rested wholly in parol," in violation of a Massachusetts statute (Rev. Laws, chap. 74, sec. 1, cl. 4), providing that a contract for the sale of lands "or of any interest in or concerning them" must be in writing. The two cases, therefore, differ fundamentally.

Since a general scheme or plan was clearly established, without resort to the representations alleged to have been made orally in behalf of the Land Company, it is unnecessary to determine how far such representations may be received in a case like this. But see *Hawley Down Draft Furnace Co.* v. *Hooper,* 90 Md. 390, 45 Atl. 456; *Hall* v. *Solomon,* 61 Conn. 476, 29 Am. St. Rep. 218, 23 Atl. 876; *Julliard* v. *Chaffee,* 92 N. Y. 529; *Rackemann* v. *Riverbank Improv. Co.* 167 Mass. 1, 57 Am. St. Rep. 427, 44 N. E. 990; *Carr* v. *Dooley,* 119 Mass. 294; *Anderson* v. *American Suburban Corp.* 155 N. C. 131, 36 L.R.A.(N.S.) 896, 71 S. E. 221.

The Grocery Company contracted to lease the proposed store building when erected, but it is not contended or shown that its equities are superior to those of the Land Company.

The decree is affirmed, with costs.                    *Affirmed.*