**In the Matter of DAVID A. ROSOW, INCORPORATED, Debtor.**

**Bankruptcy No. 2–80–01081.**

United States Bankruptcy Court, D. Connecticut.

Feb. 18, 1981.

Irving D. Labovitz, Springfield, Mass., for debtor.

Norman Zolot, Hamden, Conn., for Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union 559.

Peter Winkler, Asst. Gen. for Special Litigation, N. L. R. B., Washington, D. C., for Aileen Armstrong.

MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

This proceeding takes up the issue of under what circumstances a debtor in possession seeking reorganization may reject a labor contract. David A. Rosow, Inc. (Rosow), a liquor and drug wholesaler operating out of premises it leases at 184 Fenn Road, Newington, Connecticut, filed its petition under Chapter 11 of the Bankruptcy Code of 1978 (Code) on October 22, 1980. It immediately made an application for court approval under 11 U.S.C. § 365(a)[1] for re-

---

1. *Section 365. Executory Contracts and Unexpired Leases.*
(a) . . ., the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

jection of a collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union 559 (Union). The labor contract, which has a term of three years, will expire on March 18, 1982. The court, on November 10, 1980, issued an order for the Union to show cause why the collective bargaining agreement should not be rejected. The matter came on for hearing on December 10, 1980, at which time the National Labor Relations Board (NLRB) was granted permission to intervene. Post-trial briefs have been filed by all parties including the NLRB.

■ This court has recently considered the issue of the standards to be employed in this district in deciding whether or not to permit rejection of a labor contract. In *Matter of the Connecticut Celery Co.*, No. H–79–146 (July 9, 1980), I disapproved a proposed "business judgment" test[2] and concluded that the clear holdings of court of appeals decisions in this circuit require more. Because both the National Labor Relations Act and bankruptcy law represent the will of Congress in regulating areas of great public concern, "bankruptcy courts must scrutinize with particular care petitions to reject collective bargaining agreements" when a debtor seeks to be relieved of a labor contract, and the financial status of the debtor is an inadequate ground when offered as the sole reason for rejection. *Shopmen's Local Union 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698 (2d Cir. 1975), at 706–07. *Kevin Steel* concluded that a balancing of the equities, including thorough scrutiny of the potential effect upon seniority, welfare and pension rights, and other valuable employee benefits incapable of reduction to money damages, ought to be part of any decision involving rejection. *Id.* at 707. In *Brotherhood of Railway, Airline*

*and Steamship Clerks v. REA Express, Inc.*, 523 F.2d 164 (2d Cir. 1975), *cert. denied*, 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975), the court characterized its holding in *Kevin Steel* as requiring "a showing that [the labor contract] is onerous and burdensome and that the equities tip decidedly in favor of termination". *Id.* at 167. *REA Express* required a further showing that "unless the agreement is rejected, the [debtor] will collapse and the employees will no longer have their jobs". *Id.* at 172.

Consideration of the decisions just discussed led this court, in *Celery*, to hold that:

> Permission or denial of permission to reject the union contract is to be determined by the two-step analysis set forth in *Kevin Steel* and *REA Express*. A bankruptcy court may permit rejection of a union contract only where it finds (1) that there has been a showing that the contract is so onerous and burdensome that, if enforced, it will lead to the collapse of the debtor company, and concludes (2) that the equities tip decidedly in favor of rejection of the contract.

It was further held that during the reorganization, and prior to court approval of rejection of a labor contract, the debtor-in-possession is bound by the terms of the contract.

Rosow argues that because the cases relied upon in *Celery* arose under prior law, to wit, under § 313 of the Bankruptcy Act of 1898 (Act)[3], its holdings do not govern the instant proceeding. Rosow claims that because Congress did not, in terms, codify the two-step analysis evolved by courts in construing § 313 of the Act, it did not intend such analysis to be perpetuated under § 365(a) of the Code. Rosow concedes that nothing in the legislative history of the Code supports this claim of legislation by

---

**2.** In *Matter of Minges*, 602 F.2d 38, 43 (2d Cir. 1974), the court referred to a business judgment test as one "emphasizing potential greater profit for the debtor's estate in deciding whether to permit rejection of a particular contract".

**3.** *Section 313.* Upon the filing of a petition, the court may . . .

(1) permit the rejection of executory contracts of the debtor, upon notice to the parties of such contracts and to such other parties in interest as the court may designate.

silence, but urges that "it cannot be reasonably argued that Congress simply forgot the myriad of well-established precedent cited by this court in *Celery*." Rosow relies upon the following comment in *Collier on Bankruptcy* (15th Ed.) ¶ 365.03 (1980):

> Although a mere showing that rejection would improve the financial condition of the debtor did not suffice under the Act, the result may be different under the Code due to the failure of Congress to incorporate a requirement of burdensomeness into section 365. *Id.* at 365–18.[4]

■ A threshold determination required of the court, therefore, is the extent to which pre-Code decisional law, as discussed in *Celery*, applies to the resolution of the proceeding at bar. Although it is obvious that Congress did not include the pre-Code analysis of *Kevin Steel* and *REA Express* in the actual language of § 365, it is important to note that that section continues to subject the rejection of executory contracts "to the court's approval", thus continuing the discretionary oversight committed to the court by the Act. The court does not believe, with respect to the rejection of labor contracts, that congressional silence is sufficient to lead it, while exercising such discretionary oversight, to ignore case law developed under the Act. The quoted comment from *Collier, supra*, does not exhaust that treatise's reflections on the matter. Indeed, the comment is but one tentative approach to the problem. *Collier* also sets forth the pre-Code law in some detail and observes that "there is little if any reason to expect the courts to apply a less stringent standard to collective bargaining agreements under Section 365 . . .". *Id.* at 365–17. Sixteen months' experience under the Code suggests that unless there is a clear prohibition to the contrary in specific instances, courts continue to rely upon pre-Code decisional law to resolve controversies

under the Code. The standards enunciated by the court of appeals in this circuit were obviously not based on the literal language of § 313(1) of the Act, and had to be developed to accommodate the special nature of labor agreements to the general purposes of bankruptcy law. I am unaware of anything in the legislative history or case law which diminishes in the least these carefully developed standards. I hold that pre-Code case law in this circuit remains the authoritative precedent for resolving the issues before me.

■ Applying *Kevin Steel-REA Express* analysis to the instant proceeding, I conclude that Rosow's application to reject its collective bargaining agreement with the Union must be denied. Rosow has offered no satisfactory evidence to show that continuation of the labor contract is so onerous and burdensome as to lead to the corporation's liquidation. Nor has it offered any significant evidence that the equities tip decidedly in favor of rejection of the contract. The limited evidence put on by Rosow can be summed up as demonstrating only that the corporation is suffering financial difficulties and that it might save approximately $41,000.00 over the unexpired life of the contract if rejection were permitted. Rosow claims that this savings will be achieved by a 10% pay cut and reduction from 100% to 50% of its contributions to health benefit costs. The labor contract covers 12 to 14 truck drivers. There are approximately 125 non-union employees in the company. Although Rosow unilaterally imposed the 10% pay cut and reduction in health benefit contributions upon its non-union employees prior to filing its Chapter 11 petition, the Union refused to accept such cuts voluntarily. A document prepared by Rosow indicated that savings of $41,351.00 would be achieved over the 65 weeks the union contract had left to run, for an

---

**4.** *See also* Hughes, " 'Wavering Between the Profit and the Loss:' Operating a Business During Reorganization Under Chapter 11 of the New Bankruptcy Code", 54 Am.Bankr.L.J. 45:
In view of the lack of special treatment given labor contracts in § 365 and the failure by Congress legislatively to overrule cases under the Bankruptcy Act giving bankruptcy power more weight than labor law policy, such a holding [onerousness and burdensomeness, and collapse of the debtor tests] under § 365 has a less solid basis than such a holding under the Bankruptcy Act. *Id.* at 86, n. 286.

average weekly saving of \$636.17. According to a financial statement offered by Rosow, its weekly operating expenses come to about \$100,000.00 of which \$47,000.00 are for salaries and commission. The impact of \$636.17 on a \$100,000.00 operating expense is, in practical terms, *de minimis*. The foregoing statement of the evidence reveals its total failure to satisfy the required *Kevin Steel-REA Express* showing that a labor contract must be so burdensome and onerous that the company would collapse unless the contract were rejected. In fact, Rosow does not seriously argue that it has made the requisite showing. Rather it points to a speculatively negative effect on its other employees of Union non-participation in the pay cut and argues that the court should allow contract rejection so that it may impose the 10% pay cut on Union employees.[5] But where the standards for labor contract rejection have clearly not been satisfied, this argument cannot be considered by the court.[6]

The application of David A. Rosow, Inc. to reject its collective bargaining agreement with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union 559, is hereby denied, and it is

So ordered.

This memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.

---

**5.** Rosow's post-trial brief states that Rosow is not seeking "an outright termination of the contract", but only "a ten (10%) percent reduction in union wages so as to allow parity between the fourteen (14) union employees resisting the reduction, and the approximate one hundred and twenty-five (125) non-union employees otherwise accepting the same." (Rosow brief, p. 3). Of course, there is no provision in § 365 for partial rejection of contracts.

**6.** Both the Union and the NLRB point out that Rosow leases its premises from members of the Rosow family who are its sole stockholders. The rental is \$15,000.00 a month on a net basis and no change in that rental has been proposed.