In re LANE COUNTY SHERIFF'S OFFICERS ASSOCIATION, INC., dba Lane County Sheriff's Officers Association, AFSCME Local 2257 Sheriff's Association, Debtor.

**Bankruptcy No. 680–07301.**

United States Bankruptcy Court,
D. Oregon.

Sept. 25, 1981.

Owen McCullen, Eugene, Or., for debtor.

Thomas Huntsberger, Springfield, Or., for trustee.

## MEMORANDUM OPINION

C. E. LUCKEY, Bankruptcy Judge.

There is presented to the Court an application by the trustee of a debtor public employee union to accept an executory contract (Collective Bargaining Agreement) of the union entered into in behalf of its members with Lane County, Oregon, as public employer, and in the event such acceptance be approved over objections which have been made thereto, his application to compromise the contract terms by assigning it to the debtor in consideration of payment to the trustee of $10,000 from controverted contract proceeds which proceeds were interpleaded by the employer in state court because of claims of a judgment creditor of the debtor and asserted interests by the debtor therein resulting from wage checkoffs provided for in the collective bargaining agreement.

■ A labor organization can be a debtor, and is generally treated as though it had the characteristics of a corporation. 11 U.S.C. § 101(8)(A)(iv); *Highway and City Freight Drivers, etc. v. Gordon,* 576 F.2d 1285 (8th Cir. 1978). The legislative history of § 101(8)(A)(iv) states " 'unincorporated association' is intended specifically to include a labor union..." House Report 95–595, 95th Cong., 1st Sess. 309 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787.

Contracts are the subject of considerable legislative and judicial modification and revision in both labor law doctrine and bankruptcy law doctrine.

■ Collective bargaining agreements are subject to acceptance or rejection as executory contracts. *Local Joint Executive Board v. Hotel Circle,* 613 F.2d 210 (9th Cir. 1980); *In the Matter of David A. Rosow, Inc.,* 9 B.R. 190, 7 B.C.D. 357 (Bkrtcy., D.Conn.1981). The collective bargaining agreement is generally regarded by treatises and judicial opinion as *sui generis* and subject to unique treatment based upon policy considerations. The U.S. Supreme Court in *United Steelworkers of America v. Warrior and Gulf Navigation Company,* 363 U.S. 574, 578, 580, 80 S.Ct. 1347, 1350–1351, 1352, 4 L.Ed.2d 1409 (1960) characterized collective bargaining agreements as "more than a contract". "It is a generalized code to cover a myriad of cases" and "is an effort to erect a system of industrial self-government". Federal labor policy, the Court states, is to promote industrial stability through collective bargaining agreements.

When the *sui generis* contract between a labor organization and its employer is further complicated by the union's bankruptcy with the ramifications of the debtor's obligation to make its assets available for creditors a problem is presented which does not appear to have been the subject of judicial treatment.

Equity, policy considerations and contract law all may play a part in a decision charting a course through muddy, unmarked waters.

Courts have dissected these executory contracts under varying theories. See Cox, *The Legal Nature of Collective Bargaining Agreements,* 57 Mich.L.Rev. 1, 20 (1958); *Shopmen's Local Union No. 455, etc. v. Kevin Steel Products, Inc.,* 519 F.2d 698 (2nd Cir. 1975).

One of the theories advanced, and the one that this Court is convinced that in the context of the facts of this case, the third party beneficiary concept, most nearly provides a reasonable theory to resolve the problems presented, particularly under the circumstance where the employer is a public agency and the debtor is a union representing public employees. See, R. A. Smith, *Labor Relations Law,* 759 (5th Ed. 1974) which states:

"3. The collective agreement is a third party beneficiary contract, with the employer and union the mutual promisors and promisees, and with the employees the beneficiaries. Despite arguable shortcomings (is the employer to be left with recourse against the employee beneficiary, who has made no promises?), the third party beneficiary theory became rather widely accepted as the best explanation of the collective agreement in

terms of traditional common-law concepts."

Under this concept the union enters into an agreement with the employer with the employees the third party beneficiaries of the agreement.

■ The bankruptcy trustee's interests are only in the monetary benefits of the collective bargaining agreement of the debtor union. The employer's interest, if any, is to avoid the burdens of the contract, or to have an organization with which to negotiate with if continuity of employee relations depends upon such continuity. The employee third party beneficiaries' interest is in preserving the benefits of the negotiated agreement and the continuity of a representative absent choice or selection of another.

The contract in this context is severable as to its terms and may be bifurcated. The trustee in a bankruptcy case assume the monetary portion of the contract without impairing any obligation created to the employer under the contract without more, and leave the remaining provisions to be enforced by the debtor and the employee third-party beneficiaries, as an equitable result giving consideration to the policies of bankruptcy law and labor law in the opinion of this Court.

There is no equity in requiring the trustee to be saddled with the risks and burdens of enforcement of permissive portions of the agreement, or of labor negotiation.

There is no equity in requiring the employees to lose the benefit of their agreement or in requiring them to have their negotiations conducted by a new successor entity—the representative of the estate of the debtor, i.e., the trustee in the bankruptcy case.

If the trustee's only assumption is of the monetary portion, the remaining provisions revert to the debtor and/or the third party beneficiaries, the employees, which provisions are generally not rejectable under labor law decisions. The third party beneficiaries have no more cause to complain against the trustee for circumstances leading to his right to their union's treasury than they would have as a result of any casualty other than the judgment entered against the union or other actions of the union.

The third party beneficiaries may face funding problems or choices concerning future representation, but they are not entitled to prevent union assets flowing to the trustee in the bankruptcy case for period of contract term ending July 1, 1982, or ending by other circumstances resulting in its termination. The employees are entitled to the enforcement by the debtor of the negotiated agreement for its term and in accord with the rules of the organization. If in fact officers of the union acted improperly resulting in the order for relief as a debtor in bankruptcy proceedings, the employees may pursue such proceedings as may be appropriate against such parties.

There is no equity in frustrating a judgment creditor from satisfaction as far as the assets of a debtor may provide funds in the bankruptcy case.

The trustee may assume the portion of the contract requiring check-off funds to be paid the debtor, now to the trustee.

The remaining provisions of the agreement shall revert to the debtor union or to the employees to be exercised for the benefit of the employees as not the type of contract provisions which an employer may reject, whether solvent or insolvent absent showing of undue burden.

Although a normal executory contract must be accepted or rejected within 60 days by the trustee, he cannot in equity by inaction achieve a result the labor law would prevent. Also herein the trustee was not the trustee of the estate of Local 2257 until it was joined less than 60 days before his application to accept.

Under the facts of this case, the trustee is deemed to have timely moved to accept the contract, and is entitled to an order that he may accept the monetary check-off benefits of the contract as incident to bankruptcy administration, with remaining provisions of the contract ordered vested in the debtor

or the employees as interests of the parties to the agreement to be exercised by them as not appropriately the subject of bankruptcy administration and under appropriate labor law policy.

This constitutes an equitable resolution of the Bankruptcy Code's policy of marshalling all of the debtor's assets for the benefit of its creditors and the labor law policy of encouraging continuity and enforcement of collective bargaining agreements as a means of furthering industrial peace, stability and harmony. See ORS 243.656(2).

This result does not preclude Lane County, the public employer herein, from in appropriate circumstances availing itself of the rights of an employer under the provisions of Chapter 243 ORS.

To hold otherwise in cases of a debtor union would vest in the trustee the right to determine continuity of a labor contract although as a bankruptcy trustee, apart from fiduciary obligations, his only interest is in the marshalling and distribution of assets.

This Court's great reluctance to innovate and impose a doctrine approaching judicial legislation must in this instance give way to the need of adjudicating rights in a case in which legislative guidelines are incomplete and in which judicial opinions offer only guidelines based on altogether different facts. The reasons for the opinion may be obscure in law, but serve to protect the interests inherent both in bankruptcy and labor law which must be accommodated in this case.

This memorandum opinion contains the findings of fact and conclusions of law of the Court and pursuant to Bankruptcy Rule 752(a), they will not be separately stated.