**In re ATECO EQUIPMENT, INC., Debtor.**

**ATECO EQUIPMENT, INC., Plaintiff,**

**v.**

**AUTOMOTIVE MECHANICS LODGE NO. 1060, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant.**

**Bankruptcy No. 81–2981.**
**Adv. No. 81–1987.**

United States Bankruptcy Court,
W. D. Pennsylvania.

March 24, 1982.

Sanford M. Lampl, Mary Anne McKeen, Pittsburgh, Pa., for debtor/plaintiff.

Arthur Cutruzzula, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter before the Court is a Complaint filed by the Debtor in which it seeks to reject its Collective Bargaining Agreement ("Agreement") with the Defendant. The action is brought pursuant to Section 365 of the Bankruptcy Code. The parties entered into the Agreement on June 25, 1980 and it will expire May 31, 1983.

## FINDINGS OF FACT

The Debtor states that the contract is burdensome to its reorganization and continuing operation. The Debtor offers two reasons for reaching that conclusion. First the Debtor argues that the rejection of the contract would save the Debtor $225.00 per month per worker. This is an estimate of the savings which would result from no longer having to pay the benefits to the union employees required under the present Agreement. On direct examination the

Debtor's president, Mr. King, stated that this savings would involve 20 workers. On cross-examination Mr. King admitted that while only 10 employees were members of the union, it was corporate policy for the other 10 employees to receive the same benefits as the union workers. We conclude that $2,250.00 would be saved by the rejection of the Agreement.

The Debtor states that additional savings would arise from the rejection of the Agreement because the Debtor could more easily lay off workers with seniority. The Debtor states that formerly its business consisted of more manufacturing work and that the senior people on its work force were hired to do that work. Now the majority of its business is in assembly and repair and the senior workers are unskilled in this area, but that the union Agreement prevents laying them off. The Debtor claims that it has received complaints and has had to turn away business because of their lack of skill.

The union responds by stating that under the contract the Debtor can lay off employees who cannot perform and that these disputes can be resolved pursuant to the grievance arbitration mechanism in the Agreement. The Debtor answers by stating that this grievance procedure is too lengthy.

## CONCLUSIONS OF LAW

This case before the Court presents a different factual situation from that decided in *In re South Union Coal Co.*, Bankruptcy No. 81–1648, Adversary No. 81–2060, January 20, 1982 (B.C.W.D.Pa.), which was recently decided by this Court. In *South Union* we allowed the Debtor to reject the collective bargaining agreement with the United Mineworkers. In that case the Debtor was no longer doing business.

In *South Union* we stated, however, that the burdensomeness test for rejection of collective bargaining agreements set forth in a line of cases beginning with *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698 (2nd Cir. 1975) decided under the Bankruptcy Act was not controlling under the Bankruptcy Code. Collier states:

Although a mere showing that rejection would improve the financial condition of the Debtor did not suffice under the Act, the result may be different under the Code due to the failure of Congress to incorporate a requirement of burdensomeness into section 365. 2 *Collier on Bankruptcy*, 365–18, 19 (15th Ed. 1981).

We agree with this view.

The rationale for the conclusion in cases such as *Kevin Steel* under the former Act is that the rejection of collective bargaining agreements pursuant to bankruptcy legislation has placed the Bankruptcy Act in conflict with the National Labor Relations Act ("N.L.R.A.") and that tampering with the N.L.R.A. has to be pursuant to specific statutory language. Although these courts conceded that collective bargaining agreements are subject to rejection as executory contracts (see *In re South Union Coal Co.*, supra, at page 2), in order to reconcile the N.R.L.A. with the Bankruptcy Act they engaged in a process of weighing equities.

We do not feel this is an appropriate approach under the new Code. The Bankruptcy Code presents a comprehensive scheme for dealing with bankruptcies. First, Congress was aware of these cases and did not carve out a special test of burdensomeness for collective bargaining agreements under the Code. Second, Congress knew how to accomplish that result. The Code does make a specific exception for collective bargaining agreements in Subchapter IV of Chapter 11 regarding Railroad Reorganization. Section 1167 states:

Notwithstanding section 365 of this title, neither the court nor the trustee may change the wages or working conditions of employees of the debtor established by a collective bargaining agreement that is subject to the Railway Labor Act (45 U.S.C. 151 *et seq.*) except in accordance with section G of such Act (45 U.S.C. 156).

Third, it is easier for aggrieved union members who have been damaged by the rejection of their collective bargaining agree-

ment to file claims under the Code than it was under the Act.

Under section 57d of the Act the claim of the employees arising from the breach might not have been allowable on the grounds that it was too speculative to be capable of estimation. However, under Section 502(c) of the Code such claims must be estimated. 2 *Collier on Bankruptcy*, 365–17 (15th Ed. 1981).

The Defendant in this action urges the Court to follow the case of *In the Matter of David A. Rosow, Inc.*, 9 B.R. 190, 3 C.B.C. 2nd 916 (Bkrtcy., D.Conn.1981). In that case Judge Krechevsky stated:

> Sixteen months experience under the Code suggests that unless there is a clear prohibition to the contrary in specific instances, courts continue to rely upon pre-Code decisional law to resolve controversies under the Code. The standards enunciated by the court of appeals in this circuit were obviously not based on the literal language of § 313(1) of the Act, and had to be developed to accommodate the special nature of labor agreements to the general purposes of the bankruptcy law. I am unaware of anything in the legislative history or case law which diminishes in the least these carefully developed standards. I hold that pre-Code case law in this circuit remains the authoritative precedent for resolving the issues before me. *In the Matter of David A. Rosow, Inc.*, supra, at 192.

Judge Krechevsky then applied the balancing test of *Kevin Steel* and concluded that the collective bargaining agreement could not be rejected.

Insofar as this section of the Bankruptcy Code follows the old Bankruptcy Act, former case law interpretations are helpful. However, where historical interpretation under the Act is not acknowledged under the Code, a different result is suggested. Given the explicit language of the Railroad Reorganization chapter regarding this same matter, this Court concludes that Congress did not intend special treatment for collective bargaining agreements protected by the N.L.R.A. There is no language in the Bankruptcy Code protecting collective bargaining agreements such as this one from Section 365. In the absence of such language, this Court will not take it upon itself to legislate that result.

 Although we grant the Debtor's prayer for rejection of the collective bargaining agreement based on the evidence presented, we do not limit the union's right to strike [see *In re William O. Petrusch, Jr.*, 14 B.R. 825, 8 BCD 180 (D.C.W.D.N.Y.1980)] and remind the parties of their continued duty to bargain collectively pursuant to Section 8(a)(5) of the National Labor Relations Act.

An appropriate Order will issue.