**In re CONCRETE PIPE MACHINERY CO., Debtor.**

**Bankruptcy No. 82–04238.**

United States Bankruptcy Court, N.D. Iowa.

March 31, 1983.

Bruce A. Crary/Craig A. Raby, Sioux City, Iowa, for debtor in possession.

A. Frank Baron, Sioux City, Iowa, for Unsecured Creditors' Committee.

LeRoy Sturgeon, Sioux City, Iowa, for Local # 383.

Donald Molstad, Sioux City, Iowa, for Bank of Montreal.

Cynthia Moser, Sioux City, Iowa, for Sioux City Foundry.

Lester J. Gurdin, Sioux City, Iowa, for Commercial Credit.

Findings of Fact, Conclusions of Law, and ORDERS Granting the Debtor's Application for Authority to Reject Collective Bargaining Agreement, with *Memorandum*

WILLIAM W. THINNES, Bankruptcy Judge.

On February 10, 1983, the Debtor's Application came before the Court on proper notice to all interested parties. Present on behalf of the Debtor were Attorneys Craig A. Raby and Bruce A. Crary. The only Request to be Heard in this matter was filed by the General Drivers, Warehousemen and Helpers Union Local # 383 of Sioux City, Iowa, and appearing on their behalf was Attorney LeRoy Sturgeon. Both parties had an opportunity to present evidence and Debtor's Exhibit No. 1 was admitted into evidence. The Court gave the parties 15 days to submit post-trial briefs or stipulations, and the matter was taken under advisement.

The Court, now being fully advised, makes the following Findings of fact, Conclusions of Law and Orders:

## FINDINGS OF FACT

Concrete Pipe Machinery Company (hereinafter Concrete Pipe) filed a Chapter 11 Petition with this Court on July 12, 1982. Prior thereto, on September 20, 1980, Concrete Pipe had entered into a collective bargaining agreement with the General Drivers, Warehousemen and Helpers Union Local # 383 of Sioux City, Iowa, (Hereinafter Local # 383). At the peak of its business activity, Concrete Pipe employed approximately 100 to 125 persons; currently, the average number of persons employed is two per week with a maximum of six.

A number of factors have led to the business difficulties of Concrete Pipe, but the Court finds that the collective bargaining agreement is burdensome to the Debtor, given the Debtor's financial woes. The record shows that the Debtor will not be able to successfully reorganize unless the collective bargaining agreement is rejected. The Debtor will not likely resume normal operations, thus not returning any unemployed workers to their jobs, if the financially burdensome covenants of the collective bargaining agreement must be performed.

On the record before the Court, even the weekly pension payments required of the Debtor would be an impediment to the future viability of the business. In addition,

withdrawal liability from the pension fund would be approximately $375,000.00. If the contract is not rejected, the resulting priority claim would hinder any Plan of Reorganization that the Debtor might be able to propose. If the contract is rejected, the resulting unsecured claim would be more manageable for the Debtor's Reorganization Plan.

The prospective purchasers of the company have declined to make binding offers while the collective bargaining agreement is still in effect. It is virtually certain that no purchasers can be found if the collective bargaining agreement is not rejected.

Since filing its Chapter 11 Petition, the Debtor has not followed union contract rules for hiring and firing of employees. Additionally, some employees have performed certain services without compensation. Apparently, these actions were taken without union objection.

## CONCLUSIONS OF LAW

1. The collective bargaining agreement has not been assumed by the Debtor in Possession.

2. Under § 365(g) of the Bankruptcy Code, rejection of an executory contract relates back prior to the filing of the Chapter 11 Petition.

3. Under § 502(g) of the Bankruptcy Code, a claim for withdrawal liability resulting from rejection of the collective bargaining agreement is a claim arising before the filing of the Petition, and, therefore, is a general unsecured claim.

4. Collective bargaining agreements, other than those covered by 11 U.S.C. § 1167, are not afforded any special protection from the provisions of 11 U.S.C. § 365. Therefore, a Debtor need only show benefit to the estate to reject a collective bargaining agreement.

5. Even if rejection of a collective bargaining agreement is governed by more stringent standards than those the Court has adopted, the equities of this case allow the Debtor to reject the collective bargain-

ing agreement because rejection would benefit all parties.

## ORDERS

IT IS THEREFORE ORDERED that the Debtor's Application to Reject Collective Bargaining Agreement is approved.

IT IS FURTHER ORDERED that any withdrawal liability resulting from rejection of the collective bargaining agreement be treated as arising before the filing of this Chapter 11 Petition.

## MEMORANDUM

### A. *Introduction*

Concrete Pipe Machinery Company is currently a Debtor in Possession in a Chapter 11 Bankruptcy proceeding filed with this Court on July 12, 1982, and is seeking Court approval to reject the collective bargaining agreement it has with the General Drivers, Warehousemen and Helpers Union Local # 383 of Sioux City, Iowa. Concrete Pipe contends that rehabilitation would be severely hampered or perhaps impossible if it must continue to abide by the terms of the collective bargaining agreement. Additionally, Concrete Pipe is investigating the possibilities of selling the company. None of the potential buyers, however, are willing to bid on the company with the collective bargaining agreement in place.

During its period of greatest activity, Concrete Pipe employed well over 100 persons. Now the average is approximately two per week with a maximum of six. If there is any hope to restore some of the lost jobs, the collective bargaining agreement must be rejected by Concrete Pipe to insure a chance for rehabilitation, or to facilitate a sale of the company to a financially sound purchaser. For this reason alone, the balance of equities favors rejection of the collective bargaining agreement. *See* the test in *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc. (Kevin Steel)*, 519 F.2d 698, 707 (2d Cir.1975). Additionally, the Court notes that Congress has made a policy decision not to insulate collective bargaining agreements from the general provi-

sions of Bankruptcy Code § 365. *See,* H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977); *See also, In re Bildisco,* 682 F.2d 72, 78 (3d. Cir.1982); and *In re Ateco Equip. Co.,* 18 B.R. 915, 917 (Bkrtcy.W.D.Pa.1982). Therefore, collective bargaining agreements should receive no more protection than other executory contracts which may be rejected or assumed. *Ateco,* 18 B.R. at 916–17. Finally, the record indicates that there is a compelling need to reject this contract, with little or no concomitant adverse effect to the employees. Therefore, even the most stringent tests that have been applied to the rejection of collective bargaining agreements are met in this case. *See, e.g., Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.,* 523 F.2d 164, 169 (2d Cir.1975) cert. den. 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975) and 423 U.S. 1073, 96 S.Ct. 855, 47 L.Ed.2d 82 (1976); and *In re Alan Wood Steel Co.,* 449 F.Supp. 165, 169 (E.D.Pa.1978).

### B. *Rejection of Executory Contracts*

Bankruptcy Code Section 365(a) provides the general power for assumption or rejection of an executory contract. Much has been said and written about the tension between this provision of the Bankruptcy Code and the NLRA provisions which give special protection to collective bargaining agreements. *See,* National Labor Relations Act §§ 7 and 8, 29 U.S.C. §§ 157 and 158. Many Courts have held that special scrutiny must be given to rejection of these agreements, and that rejection of collective bargaining agreements requires a greater showing than rejection of other executory contracts. *See, Bildisco,* 682 F.2d at 79, and *REA Express,* 523 F.2d at 169. This Court is not bound by those decisions and cannot agree with their rationale.

■ No doubt Congress was aware of the tension between Bankruptcy Code § 365 and NLRA §§ 7 and 8. Through 11 U.S.C. § 1167, Congress chose to limit the Court's power with regard to collective bargaining agreements governed by the Railway Labor Act, *see,* H.R.Rep. No. 595, 95th Cong., 1st Sess. 423 (1977), U.S.Code Cong. & Admin.

News 1978, p. 5758; *see also, Bildisco,* 682 F.2d at 78; it made no similar provision for collective bargaining agreements governed by the NLRA. Congress has made a policy decision not to limit the scope of § 365 with regard to collective bargaining agreements except those governed by the Railway Labor Act. It is not within the purview of this Court to override that policy by placing greater barriers to assumption or rejection of executory contracts than Congress has already placed within the Bankruptcy Code.

■ There are at least two good reasons why Congress would have chosen not to give special protection to collective bargaining agreements under the new Bankruptcy Code. First, it is much easier for a Union or one of its members to bring a claim for damages resulting from rejection of a collective bargaining agreement than it would have been under the old Bankruptcy Act. *Ateco,* 18 B.R. at 916–17. In addition, even after rejection of a collective bargaining agreement, an employer is required to bargain in good faith with the Union. NLRA § 8, 29 U.S.C. § 518; *Bildisco,* 682 F.2d at 80. Those two factors, together with the policy provisions of the Bankruptcy Code for rehabilitation of debtors, supply ample justification for the failure to provide special protection for collective bargaining agreements.

If collective bargaining agreements should not receive special treatment under the Bankruptcy Code, then the Court should approve rejection if the Debtor can show that rejecting the contract will substantially improve the chances for reorganization. *See generally, In re Ateco,* 18 B.R. 915, and 2 *Collier on Bankruptcy,* ¶ 365.03 at 365–18 (15th ed. 1981). Clearly, the Debtor has done that in this case. The Court found very credible the Debtor's uncontradicted testimony that the Collective Bargaining Agreement was very burdensome to operations, and that no one was likely to purchase the company with the agreement in force. Further, the Debtor has made sufficient showing to meet the even higher standards that this Court has refused to adopt.

The standards of *Kevin Steel,* as interpreted by *Bildisco,* require a showing by the Debtor that the contract is burdensome, and then a weighing of the equities. Basically, a weighing of the equities means balancing the benefit to the Debtor against the harm to the employees who are beneficiaries of the collective bargaining agreement. Under that standard, the Debtor in this case would still be entitled to reject the collective bargaining agreement. The major consideration is that very few workers are now benefiting from this contract, and even those few who are now employed may lose their jobs if this Debtor is not reorganized. Both the Debtor and the employees will benefit by rejection of this contract if the Debtor is able to reorganize and recall some of those employees. In other words, the advantages to the Debtor are obvious and great, while the detriment to the employees is not substantial.

Prior to the ruling in *Bildisco,* some Courts interpreted the *Kevin Steel* decision very strictly against rejection. Essentially, those cases required the Debtor to show that it would be impossible to reorganize without rejection of the contract. *REA Express,* 523 F.2d at 169; *Alan Wood Steel,* 449 F.Supp. at 169. Even under this very stringent test, Concrete Pipe would be entitled to reject the collective bargaining agreement. Concrete Pipe is in dire financial straits and all potential purchasers of the company require that no collective bargaining agreement be in force before they bid. Given Concrete Pipe's current financial position, it will not be able to reorganize without rejecting the collective bargaining agreement.

### C. *Consequences of Rejection*

One of the major concerns of Concrete Pipe, in structuring its reorganization, is the character of the "withdrawal liability" arising from failure to pay into the pension fund. Concrete Pipe notes that the withdrawal liability would be more manageable, as a general unsecured claim, if the contract were rejected. Conversely, the withdrawal liability would have priority status if it occurred during administration of the estate. Local # 383 denies that any such dichotomy exists; they claim that the character of the withdrawal liability is fixed.

Under § 365(g), if the contract has not been assumed, rejection will relate back prior to the filing of the petition. 11 U.S.C. § 365(g). Under § 502(g), claims arising before the filing of the petition are general unsecured claims. 11 U.S.C. § 502(g); *See, In re Price Chopper Supermarkets, Inc.,* 19 B.R. 462, 467 (Bkrtcy.M.D. TN 1982). Local # 383 is obviously aware of these provisions and has claimed in its brief that the Debtor assumed the collective bargaining agreement after the filing of the petition. If that were the case, any subsequent rejection of the contract would occur after the filing of the petition, and thus "improve" the status of the withdrawal liability to a priority claim. Local # 383 argues in its brief that Debtor has assumed the collective bargaining agreement by continuing to employ from two to six persons to conform to the terms of the agreement. There is nothing on the record to indicate that the Debtor has assumed the collective bargaining agreement. It is possible for a debtor to assume a contract by actions rather than words, and it is not necessary for the Debtor to actually petition the Court for assumption or to make some verbal statement of intention to assume, *see, e.g., Matter of Steelship Corp.,* 576 F.2d 128, 132 (8th Cir. 1978). It is clear in this case that the Debtor never intended to assume the collective bargaining agreement; credible uncontradicted testimony established that the debtor in possession operated the business in a manner contrary to contract terms. All the evidence before the Court shows a debtor bent on rejecting, not assuming, the contract. Local # 383 has offered no contrary evidence. Consequently, the collective bargaining agreement has not been assumed by the Debtor in Possession, and a rejection of that contract would make the "withdrawal liability" a general unsecured claim rather than a priority claim.

### D. *Conclusion*

By rejecting the collective bargaining agreement, the Debtor would have, at the

very least, a greatly improved chance of reorganization. Conversely, the debtor will almost surely be forced to liquidate if not allowed to reject the agreement. The employees covered by the collective bargaining agreement stand to lose very little. Over 95 percent have already lost their jobs, and the few remaining workers may not be employed for very long. There is also a potential benefit for the employees in that a rehabilitated debtor could provide jobs for many of those laid off. Under any of the tests discussed above, the Debtor should be allowed to reject the collective bargaining agreement, and increase its potential for reorganization.