# CHARLESTON.

A. E. THOMAS *v.* LOVIE FISHER

(No. 5179)

Submitted March 24, 1925.   Decided September 8, 1925.

EVIDENCE—*Under Written Contract for Hauling, Without Specifying Place From Which Material Was to Be Hauled, Evidence of Contemporaneous Oral Agreement, Fixing Place From Which Hauling Was to Be Done, Is Admissible.*

A written contract relative to the building of a house stipulated that one of the parties thereto should do the hauling, but specified no place from which the material was to be hauled. Evidence is admissible to prove a contemporaneous, oral agreement fixing the place, or places, from which the hauling was to be done.

(Evidence, 22 C. J. § 1715.)

(NOTE:   Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Monongalia County.

Action by A. E. Thomas against Lovie Fisher, to recover balance due on contract.   Judgment for plaintiff, and defendant brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*C. William Cramer* and *Rollo J. Conley,* for plaintiff in error.

*M. W. Ogden,* for defendant in error.

HATCHER, JUDGE:

A. E. Thomas is a building contractor, and resides at Fairmont.   Mrs. Fisher lives near Arnettsville, which is a station on the B. & O. Railroad.   In 1922, these parties entered into a written contract relative to the construction of a house for Mrs. Fisher, which is as follows:

> "This Agreement, Made this the 29th day of August, 1922, by and between Lovie Fisher, party of the first part, and A. E. Thomas, party of the second part,
> (First)   Second party agrees to build a tile stucco Six Room House with basement—complete.

And house to be completed with Furnace (pipe-less) ; two rooms with oak and to be first-class material and first-class workmanship.   House to be outside 30x38 feet.   Bath complete and wiring for lights; sub floor with sanitary (sink), slate surface shingle roof.   Brick mantle and chimney.   Brick or block pears in basement.   Window seats in Dining Room, said finish plastering.   Drain pipe for basement.   Attic to have ruff floor.

House to be complete like plan on other side of this sheet.   First party is to do all hauling and grading.   And pay along as the building advances and to pay second party Six Thousand Dollars ($6,000.00) when the house is completed.

A. E. Thomas<br>Lovie Fisher.''

How near the house is to Arnettsville does not appear, but it is about a mile from the Fort Grand siding on the Indian Creek & Northern Railroad, and is about 12 miles from Fairmont.   A hard road extends from Fairmont to within about one-half mile of the house.   Upon the completion of the house, the contractor rendered a bill to Mrs. Fisher for $6,714.87. The items comprising the account are $6,000.00 for building the house, $67.87 for extra work and materials on the house, and the balance of $647.00 for hauling materials for the house from Baxter, Rivesville, Dakota, and Fairmont.   Mrs. Fisher was given credit on the account for $5,976.53.   Upon her refusal to pay the balance charged, an action of assumpsit was brought against her by the contractor in the circuit court of Monongalia county.   On cross-examination, the contractor testified that it was the understanding between Mrs. Fisher and himself at the time the contract was signed, that Mrs. Fisher was to do the hauling from

"any place it had to be hauled from.   *   *   * Fairmont or if we could get it down to Lowesville, if there wasn't an embargo, we were to have it shipped down there.''

He also stated that sometime after the house was commenced, Mrs. Fisher said

"that she could not do the hauling; that her boys were so busy hauling and loading coal that they could not possibly do the hauling and could not hire a truck, and that they was hauling coal day and night, running two or three shifts, and she could not even do it at night and that I would have to make arrangements myself, and I told her if I did the hauling that I would have to go and buy a truck as I did not have one, and it was our agreement that I was to buy a truck and hire what I could. She said she might as well pay me as her boys that she had to pay them any way."

Mrs. Fisher denied asking Mr. Thomas to do the hauling, and offered evidence

"that the original contract was intended to call for hauling from Fort Grand, a station about a mile and a half from the residence to be constructed, and that the reason it was not in the contract was that they did not know the name of the Station or siding, and that that fact was a consideration for a new contract, by reason of the fact that A. E. Thomas could do the hauling himself easier and cheaper from Fairmont by truck than he could have it hauled to the station at Fairmont and other points and pay the freight to Fort Grand siding, from which place the defendant was to haul it to the residence, under the written contract."

This evidence was objected to, and the objection sustained by the court. The trial resulted in a verdict and judgment of $550.00 for the contractor, and Mrs. Fisher prosecutes error here.

Several errors are charged to the trial court, but counsel have seemingly abandoned all save one. Their brief sums up the case as follows:

"If the Supreme Court takes the view that because Mrs. Fisher signed a contract stating that she would do all the hauling that she was compelled to do it from whatever place the plaintiff desired, then the plaintiff in error Mrs. Fisher, has no case.

> If, on the other hand, the Supreme Court takes the view that testimony should be introduced to explain the point from where this hauling was to ·have been done, then we earnestly contend that this case should be reversed and a new trial awarded.''

Counsel for the contractor contend that the evidence offered by Mrs. Fisher was inadmissible on the ground that it tended to contradict, vary, add to, detract from, or supply a defect or omission in the terms of a written instrument, citing *Crawford* v. *Workman,* 64 W. Va. 13, and *Duty* v. *Sprinkle,* 64 W. Va. 39.

The authorities and decisions are unanimous that oral evidence cannot be admitted to vary or contradict a writing, but the rigid rule against the introduction of parol evidence when there is a written contract has been relaxed in recent years, so that now parol evidence may be introduced not only to exhibit the circumstances surrounding the making of a written contract, but also for the purpose of giving completeness to a stipulation of a contract that is incomplete. A leading case hereon in West Virginia is that of *Johnson* v. *Burns,* 39 W. Va. 658, in which the court held:

> ''A written contract shows that logs are purchased at a given price per cubic foot, no mode of measurement being specified by it. Evidence is admissible to prove a contemporaneous oral agreement that a certain mode of measurement shall be applied.''

Parol evidence for like purpose was also approved in *Rymer* v. *South Penn Oil Co.,* 54 W. Va. 530; *Erie City Iron Works* v. *Miller Supply Co.,* 68 W. Va. 519; *Belcher* v. *Big Four Coal & Coke Co.,* 68 W. Va., 717, and *Corns-Thomas E. & C. Co.* v. *County Court of McDowell County,* 92 W. Va. 368. The opinion in the case last cited states the rule in plain, but positive terms:

> ''When a writing bears evidence of incompleteness on its face, oral evidence is admissible to support the missing or omitted element or factor.''

An examination of the decisions shows that the weight of authority throughout the United States supports the view taken by this court.

> "When the written memorandum of an agree-ment for the cutting, hauling, and driving logs or wood is silent as to the scale and the scaler, and does not import upon its face to contain all the stipulations of the parties as to the subject-matter, oral evidence may be received of an additional verbal stipulation as to the scale or the scaler".

> *Gould et al* v. *Boston Excelsior Co.*, 91 Maine 214, 39 Atl. 554.

The opinion of this case contains an illuminating summary upon this question:

> "It is difficult to reconcile the various decisions upon the general question of when parol evidence of other and oral stipulations may be received where some stipulations are expressed in writing. * * * We think, however, that a safe rule may be readily deduced from the great majority of the decisions, viz: Where the writing or writings, by reason of their brevity, informality, or skeleton nature, do not of themselves import that all the stipulations between the parties with reference to the subject matter were intended to be expressed in them, and where the particular stipulation is of such nature that the omission to express it in the writing does not indicate that it was not agreed upon, and it in no way conflicts with any written stipulation, and does not increase the burden of either party, parol evidence of such stipulation is admissible. We do not say that all the above con-ditions must exist before the parol evidence can be received. We only say that where they do exist the parol evidence is admissible."

> "A written building contract provided that the work was to be done according to certain plans and specifications to the satisfaction of one of the par-ties 'in design, workmanship, and finish.' The plans and specifications contained no details as to certain materials required, and nothing was spec-

ified as to where they were to be obtained. *Held,* that parol evidence was admissible to show that at the time the contract was made such party insisted that said materials must be obtained in the East because he considered the Eastern designs, workmanship, and finish superior; and to show that a subsequent purchase of such materials in the East was in pursuance of the understanding when the contract was made, and to comply with the requirements he was empowered to make by its express terms.''

*Creedon* v. *Patrick et al,* (Neb.) 91 N. W. 872.

''Contract to put in furnaces, merely guarantying that there should be a certain saving in cost of fuel, and being silent as to how the saving should be ascertained, evidence of a contemporaneous verbal understanding that there should be a test of a certain kind, is admissible, it not interfering with the writing.''

*Hawley Down-Draft Furnace Co.* v. *Hooper et al,* 90 Md. 390, 45 Atl. 456.

''In an action upon a written contract to sink a well and to furnish the necessary casing therefor, parol evidence is admissible to show the size of casing which it was verbally agreed should be used; the size not being stipulated in the contract.''

*Meador* v. *Allen,* 110 Iowa 588, 81 N. W. 799.

Accord: *Alexander* v. *Righter,* 240 Pa. 23, 87 Atl. 427; *Polakoff* v. *Halphen,* 83 N. J. Eq. 126, 89 Atl. 996; *Rivers* v. *Oak Lawn Sugar Co.,* 52 La. Ann. 752, 27 So. 118; *Holmboe* v. *Morgan et al,* (Oregon) 138 Pac. 1084; *Potlack Lbr. Co.* v. *North Coast Produce Co.* (Wash.) 139 Pac. 496; and *Ryder* v. *Faxon et al,* (Mass.) 50 N. E. 631.

The evidence of Mrs. Fisher which the court rejected, was offered not to vary or contradict the written instrument, but to explain and make definite an undertaking which was completely stated therein. If Mrs. Fisher could not personally engage the hauling, no reason appears why the contractor should not have hauled the material for her. In the absence

of a special agreement, however, he did not have the right to haul the material by truck at her expense from *just anywhere.* If there was no special agreement as to the place, evidence of local conditions and of local custom in regard to hauling building material would be pertinent. Unless it was the local custom to haul building material to Arnettsville from Fairmont by truck, instead of by train, the contractor would not ordinarily have the right to charge Mrs. Fisher for trucking the material from Fairmont, unless it was so understood or agreed. Neither party offered to prove the local custom.

Mrs. Fisher had the right under the authorities cited to offer evidence that the Fort Grand siding was the place from which it was agreed she should haul the material.

We are therefore of opinion that the trial court erred in refusing to permit Mrs. Fisher to give the evidence aforesaid. The judgment of the lower court will therefore be reversed, the verdict of the jury set aside, and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*