HOLIDAY PLAZA, INC.

*v.*

FIRST FEDERAL SAVINGS AND LOAN

ASSOCIATION OF CLARKSBURG,

AND THE LOWNDES BANK

(No. 14659)

Decided December 2, 1981.

*Johnson & Johnson and Charles G. Johnson* for appellant.

*Steptoe & Johnson and Edward W. Eardley, Louchery & Sinsel and Charles A. Sinsel* for appellees.

HARSHBARGER, CHIEF JUSTICE:

Holiday Plaza needed construction and long-term loans to finance three buildings in Harrison County. The Lowndes Bank agreed to make a $450,000 construction loan if Holiday Plaza could secure its long-term financing from another lendor. On April 18, 1972, a loan commitment agreement was executed with defendant First Federal Savings and Loan[1] by which Holiday Plaza was required

---

[1] Relevant agreement provisions are:

"1. First Federal Savings and Loan Association, its co-originators and assigns will within one year from date of construction loan note, payable to The Lowndes Bank, pay off said note in such amount as is due and payable on said note, such Lowndes Bank payment, however, to be conditioned upon the prior consummation of the permanent

to pay a $4,500 placement fee that would be retained by First Federal "[i]n the event the commitment is accepted and the loan is not closed on or before June 1, 1973," or refunded with interest when the loan was closed.

---

loan by Holiday Plaza, Inc., conditioned upon the performance by said Holiday Plaza, Inc., of all the terms and conditions herein required to be performed by it.

"2. An accurate survey with a Registered Engineer's or Registered Land Surveyor's Seal must be submitted prior to the closing showing the exact location of the buildings on the land.

"3. Tax receipts on the subject property for the current year must be produced at the time of closing showing taxes to be paid.

"4. Fire Insurance Policy with extended coverage, vandalism, and malicious mischief and builder's risk endorsements, in an amount at least equal to the mortgage, must be filed with First Federal Savings and Loan Association, its assignees, or its co-originators, as mortgages. Said insurance can be 80% coverage if that amount equals the amount of the loan necessary to rebuild all or any of the buildings damaged or destroyed.

"5. A financing statement will be required, encumbering all equipment belonging to Holiday Plaza, Inc., that is pertinent to the operation of said facility and not already an integral part of the structure or attached thereto. The purpose of this requirement is to insure the continued, uninterrupted operation of the business in the event of foreclosure.

\* \* \*

"7. An affidavit from the architect or engineer certifying that the buildings are built, are in compliance, and in accordance with the plans and specifications. He must also attest to the fact that the work was completed in a good workmanlike manner. The building plans, construction and architect or engineer so certifying shall be approved by First Federal. The firm of L. D. Schmidt & Son is approved by First Federal.

\* \* \*

"10. First Federal will also require, as evidence of insurance, a certificate of Public Liability Insurance; said certificate to be issued annually or on the anniversary date of the policy during the life of the mortgage. This coverage may be combined with the borrower's (James W. Thompson) general liability policies at the borrower's option, if acceptable to Thompson's insurer.

\* \* \*

"15. Upon acceptance of this commitment, the terms and conditions hereof, become binding on the parties, notwithstanding any subsequent writings or agreements unless they specifically and expressly modify the provisions hereinbefore recited. Also upon

Additional money and a time extension were required, and Holiday Plaza negotiated these with a Lowndes Bank officer who cleared them with First Federal. Closing was delayed until September 1. Holiday Plaza submitted relevant documents to Lowndes, and construction was completed by August 15.

There was no closing on September 1, and two weeks later First Federal cancelled its loan commitment because Holiday Plaza failed to close on time.

Holiday Plaza then found other long-term financing, then sued defendants for breach of contract, the placement fee, the differnce in interest on its new loan compared with First Federal's rate, and other incurred expenses.

Mr. Thompson, President of Holiday Plaza, testified about conversations with officers of each bank that defined acceptable methods of compliance with the agreement and that revealed that the September 1 deadline was not critical. Defendants' objections to that parol evidence were overruled. When plaintiff closed, defendants renewed their parol evidence objection, and the learned trial judge responded:

> "This was a matter that troubled the Court last night when I was going over the notes so in an effort to try to ascertain precisely what was said, I asked the reporter to make a superficial investigation of the testimony on that point. And the Court did not understand at the time that Mr. Thompson

acceptance of this commitment, the terms and conditions here of become one of the documents pertaining to this transaction.

"(a). Upon closing of the permanent loan, borrower shall sign, execute and deliver to First Federal a promissory note or notes and security instrument or instruments on the standard form used by First Federal, copies of which are attached hereto in blank. In all respects the terms and conditions of said instruments and notes shall apply excepting the provision for prepayment which shall be replaced by paragraph 6 hereof, the provision for assignments of rentals shall be as set out in paragraph 19 hereof, and there will be no exception or reduction of interest except as explained in paragraph 6 dealing with loan after 15th year."

was testifying that the statement was made prior to or contemporaneously with the closing. An examination of the testimony discloses that Mr. Thompson did, in fact, testify, 'Prior to closing one of these loans, Mr. Sutton [of First Federal] told me I could leave the papers at Ron Michael's over at Lowndes Bank.'

"I believe the Court was in error in the ruling and it is not too late to correct it. Statements made prior to or contemporaneously with closing or execution of a written agreement may not be utilized to vary the terms thereof. The motion will be sustained and that part of the evidence will be stricken."

Prior or contemporaneous statements may not be admitted to vary written contracts, but West Virginia has always permitted parol evidence to explain uncertain, incomplete or ambiguous contract terms. *Leasetronics, Inc. v. Charleston Area Medical Center, Inc.*, ____ W. Va. ____, 271 S.E.2d 608 (1980); *McShane v. Imperial Towers, Inc.*, ____ W. Va. ____, 267 S.E.2d 196 (1980), Syllabus (citing *Watson v. Buckhannon River Coal Co.*, 95 W. Va. 164, 120 S.E. 390 (1923)), and cases cited therein.

Plaintiff introduced evidence about where preclosing documents were to be delivered (to Lowndes) that did not vary or contradict any provision of the agreement: there was no specified depository for required documents mentioned in the contract. This was a matter of contention because one of Holiday Plaza's reasons for closing delay was that it had properly delivered all required documents to Lowndes Bank and then found closing foreclosed by First Federal because those documents had not been delivered there on time. Parol evidence should have been admitted to discover the parties' agreement on place of delivery, a point omitted from the written contract. *Thomas v. Fisher*, 99 W. Va. 419, 129 S.E. 317 (1925). Because this evidence was critical to plaintiff's case, we reverse and remand.

Plaintiff was not permitted to amend its complaint to conform with its evidence of reliance on Lowndes Bank

assertions that time was not of the essence to the contract. Contradicted trial testimony indicated that a Lowndes Bank officer told plaintiff not to worry about the September 1st deadline. West Virginia Rules of Civil Procedure, Rule 15(b), encourages amendments to conform to the evidence:

> "(b) *Amendments to conform to the evidence.* — When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. * * *"

This is to be liberally construed. *Tennant v. Craig,* 156 W. Va. 632, 195 S.E.2d 727 (1973).

We reverse the trial court and order a new trial.

*Reversed and remanded.*