In re BROADDUS HOSPITAL
ASSOCIATION, Debtor.

WEST VIRGINIA HOSPITAL INSUR-
ANCE CORPORATION, Plaintiff,

v.

BROADDUS HOSPITAL
ASSOCIATION,
Defendant.

Bankruptcy No. 92–21134.
Adv. No. 93–2021.

United States Bankruptcy Court,
N.D. West Virginia.

Sept. 2, 1993.

Kathy McCarty, Martinsburg, WV, for debtor/defendant.

John Nesius, Charleston, WV, for plaintiff.

## MEMORANDUM OPINION AND ORDER

L. EDWARD FRIEND, II, Bankruptcy Judge.

The stipulated facts and issues in this adversary proceeding follow.

### FACTS

1. In 1991, West Virginia Hospital Insurance Corporation (hereinafter "WVHIC") provided 1992 Renewal Premium Quotations to Broaddus Hospital Association (hereinafter "BHA").

2. The insurance policy was renewed for the period from 1/1/92 to 1/1/93.

3. BHA and WVHIC's agree that WVHIC has issued to hospitals in West Virginia numerous similar policies containing the deductible endorsement page which is attached to the subject policy and, notwithstanding the preprinted signature line, in no instance was a signature from a representative of the insured requested or obtained.

4. BHA paid monthly premium installments from January through July 1992, did not pay the monthly installments in August and September 1992, and paid the monthly installments for October through December 1992.

5. As of September 30, 1992, the date BHA filed its voluntary petition under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 *et seq.*), there were three civil actions pending against BHA and two additional civil actions were filed in October 1992, all of which are being defended by WVHIC. The underlying event or events giving rise to these civil actions all occurred in 1990.

6. WVHIC has paid for legal services and expenses incurred in connection with defending those actions set forth in paragraph 5, above. It is anticipated there will be future legal services and expenses in connection with these civil actions as well as any civil actions which may be brought in the future as to those potential claims of which BHA has notified WVHIC during the policy period.

7. As of September 30, 1992, BHA had previously notified WVHIC of three other potential claims based on events which, for purposes of this adversary proceeding only, occurred in February 1991, August 1991, and August 1992.

8. Subsequent to September 30, 1992, and before January 1, 1993, BHA notified WVHIC of two other potential claims. For purposes of this adversary proceeding only, one was based on events occurring prior to September 30, 1992, and the other was based on events occurring subsequent to September 30, 1992.

9. The terms and conditions of the insurance policy are clear and unambiguous.

## ISSUES

Although the parties have submitted several issues, upon consideration of the parties' memoranda, the following issues are at the heart of this matter:

1. Whether the insurance policy contained a $50,000 deductible?

2. a. Whether WVHIC's claim for unpaid pre-petition insurance premiums is entitled to administrative expense priority?

b. Whether, to the extent BHA may be liable for its deductible, such amounts are subject to administrative expense priority?

3. Whether BHA must assume or reject the renewal policy?

4. Whether the Motion to Require the Debtor to Assume or Reject the Insurance Contract is moot?

5. What ongoing or future obligations does BHA or WVHIC have on account of the insurance policy?

## DISCUSSION

**ISSUE 1:** Whether the insurance policy contains a $50,000 deductible?

It is an elementary principle that to have a valid contract, there must be an offer, acceptance and consideration. It is essential that there be mutuality, a meeting of the minds of the parties. *Martin v. Ewing,* 112 W.Va. 332, 164 S.E. 859 (1932) (*citing Va. Coal Co. v. Land Co.,* 100 W.Va. 559, 131 S.E. 253 (1926)).

BHA states that the Insurance Policy's *Deductible Endorsement* provision, Endorsement Number 9 (hereinafter "deductible endorsement"), is what creates the $50,000 deductible. BHA states that a review of the entire insurance policy reveals that this endorsement is the only endorsement which contains a signature line for acceptance by a BHA representative and that such line was left unsigned. BHA argues that, although the parties stipulated that WVHIC could show it has issued to other hospitals numerous similar policies containing unsigned, yet accepted deductible endorsements, and BHA would present no contrary evidence, such stipulation is inadmissible parol evidence. To further support its parol evidence argument, BHA notes the parties' stipulation that "the terms and conditions of the insurance policy ... are clear and unambiguous." (*See* Stipulated Fact # 9 *infra.*)

This Court will defer to West Virginia law in determining whether parol evidence may be considered in answering issues related to the effect of the subject deductible endorsement. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). West Virginia's law regarding application of the parol evidence

rule is well-settled. "Where the terms of a written instrument are unambiguous, clear and explicit, extrinsic evidence of statements of any of the parties to it made contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain its terms, in the absence of fraud, accident or mistake in its procurement." *Haymaker v. General Tire, Inc.*, 187 W.Va. 532, 420 S.E.2d 292, 293 (1992) (*citing Kanawha Banking & Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225, 232–33 (1947)). "Conversely, the law does provide that parol evidence may be used to explain uncertain, incomplete, or ambiguous contract terms." *See Haymaker*, 420 S.E.2d at 293 (*citing Glenmark Associates, Inc. v. Americare*, 179 W.Va. 632, 371 S.E.2d 353 (1988); *Holiday Plaza, Inc. v. First Fed. Sav. & Loan Ass'n*, 168 W.Va. 356, 285 S.E.2d 131 (1981); *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968)). Parol evidence may also be admitted to determine the intention of the parties. *See Glenmark Associates, Inc. v. Americare*, 179 W.Va. 632, 371 S.E.2d 353, 356 (1988); and *Creasy v. Tincher*, 154 W.Va. 18, 173 S.E.2d 332 (1970).

■■■ Based upon the stipulated facts and exhibits submitted with the Agreed Order Establishing Stipulated Facts, Stipulated Issues And A Briefing Schedule (hereinafter "Agreed Order"), this Court will find that the subject policy includes a $50,000 deductible. First, Exhibit A attached to the Agreed Order is a letter from the insurer regarding 1992 policy renewal quotations. Attached to the letter is a *1992 Renewal Premium Quotation* (hereinafter "RPQ") form which indicates, among other things, premium quotations under particular policy liability limits and a $50,000 deductible. The premium under such terms is either $160,006 or $152,004.[1] The parties stipulated that WVHIC provided the quotation to BHA and that the insurance policy was renewed from 1/1/92 to 1/1/93. (*See* Stipulated Facts # 1, 2 *infra.*) The policy

was attached as an exhibit. Page 1 of the policy, entitled *Declarations*, indicates the liability limits and deductibles associated with the policy, and indicates a premium of $152,004. Without considering parol evidence, it appears clear from the terms of the RPQ form and policy itself that the policy includes a $50,000 deductible.

However, although the terms of the policy, including the deductible endorsement, may be unambiguous, clear and explicit, the unsigned signature line on Endorsement 9 creates an ambiguity as to the effect of such endorsement. Therefore, this Court may consider parol evidence to determine the intent of the parties notwithstanding the unsigned deductible endorsement. Because BHA acknowledges its being provided with the RPQ form and renewing the insurance policy, and assuming BHA has been paying monthly premiums based upon the total premium of $152,004, it seems that the intent of the parties was that a $50,000 deductible would be included as a term of the policy.

West Virginia case law supports this finding. In *First Nat'l Bank of Gallipolis v. Marietta Mfg. Co.*, 151 W.Va. 636, 153 S.E.2d 172 (1967), the plaintiff bank sought recovery of monies from Marietta. Originally, Marietta owed money to McCorry. McCorry sought a loan from the bank. The bank agreed to make the loan upon the condition that McCorry would obtain and present to the bank a letter from Marietta stating that Marietta would make the payments owed McCorry jointly to McCorry and the bank. Such letter was provided. The bank made the loan. Although Marietta made a payment in accordance with the commitment letter, it issued later payments made payable to McCorry only. Upon the bank's suit to collect amounts owed from Marietta, Marietta denied that the subject letter created any legally binding undertaking. As to the creation of a contractual relationship, in determining the legal effect of the letter, the court stated that it must

---

1. Because a 5% rate reduction was being reviewed by the insurance commissioner, two premiums were quoted; the lower one to be applied if the reductions were approved. The alternative rates did not appear to affect the deductible amount.

not only examine the letter, but also all of the circumstances surrounding the case. *See Gallipolis* 153 S.E.2d at 176.

When the Bank, relying solely upon the unequivocal commitment of Marietta, made the loan to Mr. McCorry, a contractual relationship between those two parties was effected. Marietta's promise to pay, in the circumstances of this case, constituted an offer and the Bank's action in granting the loan to Mr. McCorry constituted an acceptance. The contention by Marietta that there was no acceptance by the Bank because it was not notified that the loan was made is wholly untenable. In cannot be seriously contended by Marietta that it did not have actual notice of the loan to Mr. McCorry. ... Conclusive, however, of the fact that Marietta did in reality have knowledge of this loan was its payment to the Bank and Mr. McCorry ... in strict compliance with its commitment contained in its letter. ...

That an acceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror is well

established. As stated in the Restatement of Contracts, Section 72(2), "Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance." Reflecting this view, this Court said in Syllabus No. 2 of *Wood & Brooks Co. v. Hewit Lumber Co.*, 89 W.Va. 254, 109 S.E. 242, 19 ALR 467: "Acceptance to enlarge such an offer into a contract need not be actual, it may be inferred from the acts and conduct of the offeree in respect thereof." ...

*Id.* at 176, 177.

By analogy, it appears BHA would state that because the subject endorsement was not signed by an insured representative, there has been no acceptance of the contract terms. The mere facts that BHA acknowledged renewal of the insurance policy and made premium payments apparently based upon premium information contained in the RPQ form and the *Declarations* page of the insurance policy, are indicative that the parties formed a contract which included a $50,000 deductible.[2] This

---

2. In the *Gallipolis* case, Marietta further contended that even if its letter and the bank's act of lending money constituted an offer and an acceptance, the contract should have failed for lack of consideration.

> That consideration is an essential element of, and is necessary to the enforceability or validity of a contract is so well established that citation of authority therefor[e] is unnecessary. Consideration has been defined as "some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another." ... A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract....
> ... [T]he Bank doubtless assumed a risk which constituted a detriment within legal con[n]otation of consideration....
> Although the risk assumed by the Bank constitutes sufficient consideration to support the contract in this case, it appears clear from the record that Marietta received a benefit from this transaction, creating a flow of consideration in both directions. If it were not beneficial to Marietta to accommodate Mr. McCorry in obtaining a loan, why would it undertake that obligation? Marietta did, as a matter of record, gain an extension of approximately

six months in the payment of the amount owed to Mr. McCorry.
*Id.* at 177.

Similarly, the risk assumed by WVHIC constitutes sufficient consideration to support the contract here. Such risk includes the insurer's potential obligation to defend BHA in various litigation and to pay out damage awards. This risk has apparently become a detriment to WVHIC in that it has been defending BHA and paying out claims. However, it also appears clear that BHA received a benefit from this transaction, "creating a flow of consideration in both directions." *Id.* Not only was BHA benefitted by its limited liability under the insurance agreement, but also by assuming a $50,000 deductible arrangement, BHA was able to contract for paying lower premiums than it otherwise would have been required to pay had it contracted for a lower deductible payment. The optional quotations attached to the Renewal Premium Quotation form reflect substantially higher premium payments in exchange for WVHIC's acceptance of lower deductible commitments.

Alternatively, W.Va.Code § 55-1-1, titled "When writing required under the statute of frauds," supports the proposition that no signed writing was needed to consummate the subject policy. Because no writing was required, this Court was free to look to other areas to deter-

768

Court finds that the subject insurance policy contains a $50,000 deductible.

**ISSUE 2a: Whether WVHIC's claim for unpaid pre-petition insurance premiums is entitled to administrative expense priority?**

■ Both parties argue their case under Bankruptcy Code § 503(b), which states:

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under § 502(f) of this title including—

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . .

11 U.S.C. § 503(b). Only those obligations of a debtor's estate which arise post-petition are entitled to administrative expense treatment. *In re Alchar Hardware Co., Inc.*, 759 F.2d 867 (11th Cir.1985). Because the outstanding unpaid premiums are pre-petition liabilities, they are not entitled to administrative expense priority and are allowed only as general unsecured claims against debtor's estate.

**ISSUE 2b: Whether, to the extent BHA may be liable for its deductible, such amounts are subject to administrative expense priority?**

It is imperative that this Court determine first when WVHIC's claim for the deductible arose. Did WVHIC's claim for payment of the deductible arise when it entered its contract with BHA? Or did WVHIC's claim arise at the time, or after, plaintiffs in the underlying actions sustained injuries? If WVHIC's claim arose when it entered its contract with BHA, then, because it arose pre-petition, WVHIC's right to payment for the deductible would be entitled to general unsecured status only. If WVHIC's claim arose after plaintiffs in the underlying actions sustained injuries, then, to the extent plain-

tiffs' injuries arose post-petition, WVHIC's claim may be entitled to post-petition administrative expense priority.

At the time the parties entered into the insurance contract, no claim arose under 11 U.S.C. § 101(5) (defining "claim"). There was no "right to payment." *See* 11 U.S.C. § 101(5). Had there been no causes of action pending against BHA at the time it filed its petition in bankruptcy, WVHIC could not have filed a proof of claim based upon law suits against BHA which have not yet been filed. Accordingly, this Court finds that WVHIC's claims for deductible reimbursements arose, at the time, or after, the plaintiffs in the underlying actions sustained their respective injuries.

■ When did plaintiff's causes of action in the underlying actions arise, pre-petition or post-petition? Based upon the stipulated facts in this case, there is only one claim which arose post-petition. All others have arisen pre-petition and, thus, are not entitled to administrative expense priority. *In re Alchar Hardware Co., Inc.*, 759 F.2d 867 (11th Cir.1985). Because only those obligations of a debtor's estate which arise post-petition may be entitled to administrative expense treatment, *Id.*, the pre-petition claims for deductible payments shall be entitled to general unsecured claim status only.

■ WVHIC nonetheless appears to argue that *post-petition* payments of *pre-petition* claims should be given administrative expense priority under Bankruptcy Code § 503(b)(1)(A). The court in *Guaranty Nat'l Ins. Co. v. Greater Kansas City Transp., Inc.*, 90 B.R. 461 (D.Kan.1988), stated:

In order for a claim to be entitled to administrative expense priority under section 503(b)(1)(A), "it must be predicated on a debt incurred (1) for the actual and necessary costs of preserving the estate and (2) after the commencement of the case." . . . Additionally, the claim

mine whether a contract existed. Therefore, although a signature line exists on the subject endorsement and remains unsigned, it appears to this Court that the intent of the parties was

that the agreement should take effect, inclusive of the $50,000 deductible. The subject policy is valid as such. *See also Parrish v. Pancake,* 158 W.Va. 842, 215 S.E.2d 659 (1975).

must arise from a transaction with the debtor-in-possession, a benefit must be conferred on the debtor-in-possession's business, and the debtor-in-possession must have induced the creditor's performance.... Finally, a claim must comport with the underlying purposes of section 503, which is to encourage the post-petition extension of credit to debtors to enable them to continue operating their businesses....

First, appellant's claim did not arise after the commencement of the bankruptcy case (*i.e.*, post-petition). Although appellant paid the liability claims post-petition, those claims accrued pre-petition....

Second, appellant's claim did not arise from a transaction with the debtors-in-possession....

Third, appellant's paying the pre-petition liability claims also did not confer a benefit to the debtors-in-possession in the continuing operation of their businesses and was not a necessary cost to preserve debtors' estates....

As pre-petition tort claims, these claims, left unpaid, would have had the status of an unsecured claim and would have received the appropriate priority.... By paying these claims, appellant essentially "stepped into the shoes" of these tort claimants, and appellant's claim thus retains the same unsecured status and the same right to priority. As the Bankruptcy Court noted, a third party's paying an unsecured claim does not transform the third party's resulting claim into one deserving administrative expense priority.

Fourth, the debtors did not induce Guaranty to pay the pre-petition accident claims. Indeed, appellant admits that it chose to pay these claims.

Finally, appellant's payments of the liability claims against debtors were not a post-petition extension of credit as envisioned by section 503....

*Id.* at 463–64.

Here, WVHIC's claim, with one exception, arose pre-petition, and not from a transaction with debtor-in-possession. It

follows that WVHIC's payment of any pre-petition liability claims did not confer a benefit upon the debtor-in-possession in the continuing operation of its business and was not a necessary cost to preserve it. BHA did not induce WVHIC to pay the pre-petition claims, and any payments which WVHIC has made or will make under the liability claims against BHA are not, nor will be, a post-petition extension of credit as envisioned under Bankruptcy Code § 503. WVHIC shall "step into the shoes" of the underlying tort plaintiffs and, therefore, as to its pre-petition claims, be entitled to no more than general unsecured claim status.

The remaining question is whether the obligation which arose post-petition is entitled to administrative expense treatment. A leading case in this area is a pre-Code case which interprets § 64(a)(1) of the Bankruptcy Act of 1898 (hereinafter "the Act"), the predecessor to Bankruptcy Code § 503(b)(1)(A). Prefacing its discussion of § 64(a)(1), the court in *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976) discussed the goals of the Act generally and Chapter XI specifically. The court noted the theme of the Act is equality of distribution. *Id.* at 953. "To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer." *Id.* The fundamental purpose of Chapter XI is the rehabilitation of the debtor's business. *Id.*

The application of § 64(a)(1) to Chapter XI arrangements is primarily a means of implementing the statutory objective of facilitating the rehabilitation of insolvent businesses. Congress recognized that, if a business is to be reorganized, third parties must be willing to provide the necessary goods and services. Since they clearly will not do so unless their claims for payment will be paid ahead of the pre-petition debts and liabilities of the debtor, § 64(a)(1) provides a priority for expenses incurred by the debtor-in-possession in order to maintain, preserve, or rehabilitate the bankrupt estate. **Sec-**

tion 64(a)(1), in addition, has been interpreted as providing general protection to claimants that are injured by the debtor-in-possession's operation of the business even though their claims did not arise from transactions that were necessary to preserve or rehabilitate the estate. *See Reading Co. v. Brown,* 391 U.S. 471 [88 S.Ct. 1759, 20 L.Ed.2d 751] ... (1968).... Since the debtor-in-possession is a separate legal entity that is carrying on the business principally for the benefit of the prefiling creditors, the Court has reasoned that fairness requires that any claims incident to the debtor-in-possession's operation of the business be paid before those of creditors for whose benefit the continued operation of the business was allowed. *See Reading Co. v. Brown....*

For a claim in its entirety to be entitled to a first priority under § 64(a)(1), the debt must arise from a transaction with the debtor-in-possession. When the claim is based upon a contract between the debtor and the claimant, the case law teaches that a creditor's right to payment will be afforded first priority only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business. When third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of § 64(a)(1) plainly require that their claims be afforded priority. It is equally clear that a claimant who fully performs under a contract prior to the filing of the petition will not be entitled to first priority even though his services may have resulted in a direct benefit to the bankrupt estate after the filing....

It follows that whether a claim for severance pay based upon an unrejected contract with the debtor and arising from a chapter XI discharge will be entitled to a § 64(a)(1) priority will depend upon the extent to which the consideration supporting the claim was supplied during the reorganization....

... It is established that a debt is not entitled to priority as a cost and expense of administration simply because the claimants' right to payment arises after the debtor-in-possession has taken some action.... It is only when the debtor-in-possession's actions themselves ..., considered apart from any obligation of the debtor[,] give rise to a legal liability that the claimant is entitled to the priority of a cost and expense of administration. When the debtor-in-possession commits a tort, ... the debtor-in-possession itself caused legally cognizable injury, and the resulting claims for compensation are entitled to first priority.

*Id.* at 953–55 (emphasis added).

Although a case under Chapter 7, the court's discussion of Bankruptcy Code § 503 in *In re Hemingway Transport, Inc.,* 954 F.2d 1 (1st Cir.1992) is also helpful.

The traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses.... The burden of proving entitlement to priority payment as an administrative expense therefore rests with the party requesting it....

*Id.* at 4, 5. The court stated that § 503(b)(1)(A) is a means of enabling the debtor estate to acquire requisite post-petition credit with which to preserve itself after the filing of the petition. *Id.* at 5. "Preservation of the estate includes protection of the assets of the estate, as well as post-petition operation of the business of the debtor." *Id.* (*citing In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir. 1976)); *In re Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984); *In re Pierce Coal & Construction, Inc.,* 65 B.R. 521, 530 (Bankr.Dist.W.Va.1986).

■ Here, WVHIC continued to provide coverage for BHA after it filed its petition in bankruptcy. BHA paid its premium payments and willingly accepted the benefits of its contract with WVHIC. To the extent BHA's liability is limited by the deductible,

clearly there is a benefit to the estate in bankruptcy. Therefore, this Court finds that, to the extent BHA is liable for a deductible payment associated with a post-petition liability, such payment shall be entitled to administrative expense priority under Bankruptcy Code § 503(b)(1)(A).

**ISSUES 3 and 4:** Whether BHA must assume or reject the renewal policy, and whether the motion to require BHA to assume or reject the insurance contract is moot?

The court in *Gloria Mfg. Corp. v. Int'l Ladies Garment Workers Union*, 734 F.2d 1020, 1022 (4th Cir.1984) stated "[b]ecause the contract expired before [debtor] was able to obtain court approval for its attempt at rejection, the contract was no longer executory.... [T]he question had been mooted by the expiration of the contract." Although the question of whether, at the time of the bankruptcy court's hearing, a collective bargaining agreement was an executory contract capable of rejection under 11 U.S.C. § 365(a), was made moot by the expiration of the contract, the court in *Gloria* did not answer the following question: whether, notwithstanding no prior court approval, the contract may be deemed to have been assumed for the period between the date of the bankruptcy filing and the contract's expiration.

"The critical date for determining the executory nature of a contract is the date on which the bankruptcy court considers the debtor's application to assume or reject the contract." *In re Gov't Securities Corp.*, 101 B.R. 343 (Bankr.S.D.Fla.1989) (*citing In re Pesce Baking Co., Inc.*, 43 B.R. 949, 957 (Bankr.N.D.Ohio 1984) (*citing Gloria Mfg. Corp. v. Int'l Ladies Garment Workers Union*, 734 F.2d 1020 (4th Cir.1984), *In re Total Transp. Serv., Inc.*, 37 B.R. 904 (Bankr.S.D.Ohio 1984))). The court in *In re Pesce Baking Co., Inc.*, 43 B.R. 949, 957 (Bankr.N.D.Ohio 1984), stated that "Although a collective bargaining agreement may be executory on the date

the debtor's bankruptcy petition is filed, once the agreement expires of its own terms, the debtor's application to reject it becomes moot."

Similarly, WVHIC's motion to compel assumption or rejection of the contract also becomes moot. Bankruptcy Code § 365(a) states that "the trustee, subject to the court's approval, may assume or reject any executory contract...." 11 U.S.C. § 365(a). This section requires that the court expressly approve a request to assume a contract. *In re Swiss Hot Dog Co.*, 72 B.R. 569 (Dist.Colo.1987) (*citing In re Bon Ton Restaurant and Pastry Shop, Inc.*, 52 B.R. 850 (Bankr.N.D.Ill.1985)). *See also Schondorf v. Calin*, 58 B.R. 1014 (Dist.N.J.1986), *In re A.H. Robins Company, Inc.*, 68 B.R. 705 (Bankr.E.D.Va.1986).

Notwithstanding these holdings, WVHIC appears to argue that the case of *In the Matter of Reda, Inc.*, 54 B.R. 871 (Bankr. N.D.Ill.1985) is controlling. The court found that, notwithstanding a want of prior court approval, certain factors shall lead to an implied assumption of a contract executory at the time of debtor's filing its petition in bankruptcy.[3] Recognizing that its case presented the "**rare instance** where the debtor's actions with regard to an executory contract constitute an assumption of that agreement for § 365 purposes," *See Reda* at 880 (emphasis added), the court in *Reda* found the following factors persuasive:

the creditor continued to perform services for the debtor after the filing of the petition;

the debtor knew what was happening;

the debtor willingly accepted the benefits of the contract and therefore assumed the burdens;

there was no evidence that the debtor requested its creditor to cease representing it in the handling of a particular matter; and

the creditor testified that he was unaware of the debtor's bankruptcy peti-

---

**3.** BHA conceded that the insurance policy with WVHIC was an executory contract at the time of the filing of debtor's Chapter 11 petition. *See*

BHA's Memorandum in Support of Position of Broaddus Hospital Association at p. 14–15.

tion until after the firm finished working on the fire loss.

*Id.* at 880 (*citing In re Concrete Pipe Machinery Co.*, 28 B.R. 837, 841 (Bankr. N.D.Iowa 1993); *In re California Steel Co.*, 24 B.R. 185, 188 (Bankr.N.D.Ill.1982); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 435 (Bankr.S.D.N.Y.1982) *aff'd* 34 B.R. 385 (S.D.N.Y.1983); *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 278–9 (Bankr.S.D.N.Y.1980)).

██ The court in *In re A.H. Robins Co., Inc.*, 68 B.R. 705, 710 (Bankr.E.D.Va. 1986) stated that "[i]t is a rare instance that the conduct of the debtor-in-possession with regard to an executory contract will constitute an assumption of that agreement for section 365 purposes." (*citing In re Concrete Pipe Machinery*, 28 B.R. 837 (Bankr.N.D.Iowa 1983); *In re California Steel Co.*, 24 B.R. 185 (Bankr.N.D.Ill.1982); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bankr.S.D.N.Y.1982) *aff'd* 34 B.R. 385 (S.D.N.Y.1983); *In re Shoppers Paradise, Inc.*, 8 B.R. 271 (Bankr.S.D.N.Y.1980)). The court in *Robins* stated that the general rule is that acceptance of benefits under an executory contract does not in and of itself work an assumption. *See Robins* at 710. However, "[a] passive acceptance of benefits from a creditor during the post-petition period merely converts that creditor's claim for post-petition services into one entitled to an administrative priority." *See Robins* at 711 (*citing In re G.H.R. Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984)). "And the Court is apprised of only a single case in which approval of an assumption by conduct was granted by *nunc pro tunc* order. *In re Reda*, 54 B.R. 871 (Bankr.N.D.Ill. 1985)." *See Robins* at 710. In none of the cases cited by the court in *Robins* as being a "rare" instance (i.e., *In re Concrete Pipe Machinery, supra; In re California Steel Co., supra; In re Yonkers Hamilton Sanitarium, Inc., supra;* and *In re Shoppers Paradise, Inc., supra*), did any court expressly determine that the conduct of the debtor-in-possession with regard to an executory contract constituted an assumption of that agreement under Bankruptcy Code § 365, thus, giving rise to the provisions of Bankruptcy Code § 365(b)(1). At most, the affected creditor shall be entitled to an administrative expense priority to the extent it benefitted the debtor-in-possession post-petition. The underlying *Reda* case is an anomaly, and this Court cannot follow its findings. Accordingly, because this Court has not approved the assumption of BHA's contract with WVHIC under Bankruptcy Code § 365(a) and because this case does not represent the "rare instance" considered by other courts, the motion to require BHA to assume or reject the insurance contract is moot. However, consistent with this Court's earlier findings, to the extent WVHIC has provided BHA post-petition benefits (i.e., to the extent of the deductible payment associated with the stipulated post-petition claim), such claim shall be entitled to administrative expense priority.

**ISSUE 5:** What ongoing or future obligations does BHA or WVHIC have on account of the insurance policy?

From the memoranda submitted by the parties, it seems that they have agreed upon this issue. There is nothing left for this Court to decide.

Consistent with this opinion, this Court finds, and it is hereby **ORDERED** that:

the subject insurance policy contains a $50,000 deductible;

the outstanding unpaid premiums are allowed only as general unsecured claims against debtor's estate;

the amounts owing for pre-petition deductible payments shall be allowed as a general unsecured claim only;

the amounts owing for the post-petition deductible payment shall be allowed as an administrative expense priority; and

the motion to require BHA to assume or reject the insurance contract is moot.

The Clerk is directed to transmit copies of this Order to the parties in interest.