39 F.3d 1178
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
TRAVELERS INSURANCE COMPANY, Plaintiff-Appellee,
v.
AUSTIN INSURANCE AGENCY, INCORPORATED, a West Virginia
Corporation, Defendant-Appellant,
and
DALLAS HEALTHCARE, INCORPORATED, d/b/a Doctors Hospital,
Incorporated, a West Virginia Corporation, Defendant.
 No. 94-1295.
 United States Court of Appeals, Fourth Circuit.
 Argued: September 29, 1994.
Decided: October 31, 1994.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. Dennis Raymond Knapp, Senior District Judge. (CA-91-1204-2)
 Robert Carter Elkins, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, West Virginia, for Appellant.
 David L. Wyant, Shuman, Annand & Poe, Wheeling, West Virginia, for Appellee.
 Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, West Virginia, for Appellant.
 David F. Nelson, Shuman, Annand & Poe, Wheeling, West Virginia, for Appellee.
 Before MICHAEL and MOTZ, Circuit Judges, and MICHAEL, United States District Judge for the Western District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this diversity action, an insurance agency was found negligent because it breached its duty to its principal, an insurance company. The agency appeals; we affirm.
 
 I.
 
 2
 This controversy arises from events commencing in October, 1989, when Austin Insurance Agency (Austin), then an authorized agent of Travelers Insurance Company (Travelers), sold a Travelers group life and health insurance policy to Dallas Healthcare, Incorporated, doing business as Doctors Hospital (Doctors).[1] The policy provided for the payment of monthly premiums by Doctors based on the number of its covered employees. Under the policy, the required premium was $285.98 per employee for the employee's own coverage, and $346.09 per employee if the employee's dependents were also to be covered. No "family" rate is set forth in the policy.
 
 
 3
 Based on the above information, Steve Pierce, the Austin employee who sold the policy to Doctors, correctly quoted to representatives of Doctors a monthly premium of $285.98 per employee but incorrectly quoted a monthly premium of $346.09 for "family" coverage. In other words, Pierce failed to inform Doctors that the employee monthly premium ($285.98) would have to be added to the dependent monthly premium ($346.09) for a total monthly premium of $632.07 if an employee and his or her family were to be covered. For the next several months, Doctors tendered its monthly premiums based on the incorrect quote provided by Pierce.
 
 
 4
 Then, on April 4, 1990, Jeff Jarrell, another Austin employee, became aware of the problem and informed Doctors that the monthly payment for group health coverage under the Travelers policy for employees with dependents (the "family" rate) should be $632.07, not $346.09. Jarrell also informed Mike Pawlicki, a Travelers representative, of the underpayments. In a letter dated April 5, 1990, Pawlicki confirmed that the proper "family" rate was $632.07 per month. A copy of this letter was mailed to Austin, which, in turn, forwarded a copy to Doctors.
 
 
 5
 During the next few months, on several occasions, Travelers reiterated its position that the correct "family" rate was $632.07 per month, not $346.09 per month. Doctors, however, continued to forward, and Travelers continued to accept, payments based on the incorrect $346.09 "family" rate. At the same time, Doctors sought alternative health insurance with the aid of Austin employee, Jeff Jarrell, and eventually applied for such insurance with Wisconsin Physicians Service.
 
 
 6
 On August 29, 1990, Thomas Juran, a Travelers representative, notified Doctors:
 
 
 7
 Please be advised that after careful review of the account, we find that the account is running favorably, and we wish to extend your present rates until February 1, 1991.
 
 
 8
 If you have any questions, please feel free to call. On the next day, August 30, 1992, Jarrell had a conversation with Juran, in which, according to Jarrell's contemporaneous notes, he asked Juran to confirm, in writing on behalf of Travelers, that "there will be no rate increase" and "to indicate what the 'correct' rates are at this time." Juran responded, again according to Jarrell's notes, that "he would give written notice of [the] new renewal date and that there would be no rate increase but said he would not indicate that the hospital could continue [to] pay the rates they[sic] have been paying ($346 family, $285 single)." (Emphasis in original.) Jarrell had a meeting on the afternoon of August 30 with two representatives of Doctors, Catherine Means and Bristol Messer, "to let them know" what he had "found out" from Travelers.
 
 
 9
 On September 7, 1990, Catherine Means discussed with Jarrell the meaning of the Juran letter. Jarrell's notes indicate that Doctors "wanted to know what 'my' [Jarrell's] opinion was on the letter received from Travelers [Juran] concerning their rates" and that Jarrell "told them that the letter was very 'open-ended' and that 'we' thought that Travelers had, in essence given them[Doctors] the 'ok' to continue doing what they've been doing for the past 11 months," i.e. to continue to pay the incorrect "family" rate of $346.09, rather than the correct "family" rate of $632.07. Neither Jarrell, nor Doctors, contacted Travelers for an explanation of the term "present rates." Immediately following this discussion with Jarrell, Doctors decided to withdraw its application for coverage with the Wisconsin Physicians Service and instead to continue to pay the incorrect rate to Travelers.
 
 
 10
 On November 6, 1990, Travelers conducted an audit of the Doctors' account and subsequently notified Doctors that it had an outstanding balance of $70,280.15 with Travelers. Doctors refused to tender payment of the additional amount. The Travelers' policy expired on January 31, 1991, at which time the Travelers' records indicated an unpaid balance of $104,844.04 on the Doctors' account. Doctors did not renew its health insurance policy with Travelers.
 
 
 11
 On December 22, 1991, Travelers filed a complaint in the Southern District of West Virginia at Charleston against Doctors to recover the unpaid premiums. On August 10, 1992, Travelers amended its complaint to include Austin as a co-defendant. Sometime thereafter, Doctors became insolvent and its assets were seized by the federal government. As a result, on June 11, 1993, Doctors was permitted to withdraw from the case.
 
 
 12
 A bench trial was conducted from September 8 through September 10, 1993. At the close of the proceedings, the trial judge instructed both sides to submit proposed findings of fact and conclusions of law. On February 3, 1994, the district court issued a memorandum opinion adopting verbatim the proposed findings and conclusions submitted by Travelers. The court entered judgment in the amount of $67,769.18, plus interest, in favor of Travelers and against Austin and Doctors, jointly and severally. Further, the court entered judgment in the amount of $37,074.86, plus interest, in favor of Travelers and against Doctors solely. Travelers Ins. Co. v. Dallas Healthcare, Inc., slip op. at 13 (S.D. W. Va. February 3, 1994). Thereafter, Austin filed a timely notice of appeal; Doctors did not appeal.
 
 II.
 
 13
 Verbatim adoption of proposed findings and conclusions of law prepared by one party is not the preferred practice, but it does not constitute reversible error. See, e.g., E.E.O.C. v. Fed. Reserve Bank of Richmond, 698 F.2d 633, 641 (4th Cir.1983), rev'd on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867 (1984). Rather "even where the trial judge adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous." Anderson v. City of Bessemer City, 470 U.S. 564, 572 (1985). See also United States v. Marine Bancorporation, Inc., 418 U.S. 602, 615, n. 13 (1974).[2] Although Austin asserts that it raises legal claims on appeal, in fact, virtually all of Austin's arguments are essentially challenges to the district court's factual findings and so are not subject to reversal unless "clearly erroneous."
 
 
 14
 Austin first argues that the district court erred in concluding that Travelers had proven a prima facie case of intentional or negligent misrepresentation. This assertion is based on a misinterpretation of the memorandum opinion and order adopted by the district court. Although the opinion does make several references to "negligent misrepresentations," a closer reading reveals that the court based its holding on the tort of negligence, not on the wholly separate and distinct torts of intentional or negligent misrepresentation.
 
 
 15
 Austin's next line of attack is that the court below erred in finding negligence. The court concluded that Travelers had succeeded in proving that Austin acted negligently on two separate and distinct occasions and that this negligence "proximately caused injury" to Travelers. The first instance of negligence found by the trial court occurred on October1, 1989, when Austin employee, Steve Pierce, misquoted the "family" rate under the Doctors policy with Travelers as being $346.09 per month, instead of $632.07 per month. There was sufficient evidence in the record both that this misquote was negligent and that it proximately caused damage to Travelers in the form of underpayments of insurance premiums for the period from October 1, 1989, to April 4, 1990. The second negligent act found by the district court occurred on September 7, 1990, when Austin employee, Jeff Jarrell, opined to Catherine Means of Doctors that the August 29 letter from Travelers' representative, Juran, was very "open ended" and "in essence gave Doctors Hospital the 'ok' to continue doing what they had been doing for the past 11 months," i.e., paying a $346.09 "family" rate. Again, there is sufficient evidence both that Jarrell's "opinion" was a negligent breach of duty and that this negligence proximately caused damages to Travelers in the form of underpayments of insurance premiums for the period from September 10, 1991, through January 31, 1992.[3] Furthermore, we find no error in the district court's application of West Virginia law with regard to the tort of negligence. West Virginia law requires that an agent exercise reasonable care in carrying out the duties delegated to it by the principal. National Grange Mutual Ins. Co. v. Wyoming County Ins. Agency, Inc., 156 W. Va. 521, 524 (1973). A breach of duty by an agent is equivalent to negligence and is sufficient to impose liability upon an agent for any act that proximately causes loss to the principal. Id. Having found that the October 1, 1989, misquote by Pierce and the September 7, 1990, opinion by Jarrell, constituted negligent acts by Austin, the court properly awarded damages. As a result of the Pierce misquote, the district court assessed damages in the amount of $27,516.88--the additional premiums owed for the period from October 1, 1989, to April 4, 1990. As a result of the Jarrell "opinion," the court assessed damages in the amount of $40,252.30--the additional premiums owed for the period from September 10, 1990, the date on which Doctors withdrew its application with Wisconsin Physicians Service, to January 31, 1991, the date on which the Travelers policy expired. Our review indicates that the district court properly calculated these two periods of damages.
 
 
 16
 Austin next argues that the trial court erred in failing to consider whether Travelers ratified the actions of its agent, Austin, relieving Austin of any liability to Travelers. Under West Virginia law, the burden of proving ratification by "clear and distinct" evidence rests with the agent. Brand v. Lowther, 168 W. Va. 726, 735 (1981). A mere preponderance of evidence is insufficient to support a finding of ratification. Id. Particularly in light of this heightened proof requirement, we find nothing clearly erroneous in the district court's conclusion that Austin failed to establish ratification. The fact that the district court failed to address specifically the issue of ratification in its decision does not compel a contrary result.[4]
 
 
 17
 In addition, Austin makes several arguments based on theories of estoppel and waiver. The district court concluded that equitable estoppel did prevent Travelers from recovering unpaid premiums resulting from the Pierce misquote once Travelers became aware of the misquote. Accordingly, the trial court refused to award damages for losses occurring after April 4, 1990, the date on which Travelers was notified of the mistake, and before the new Austin negligence, i.e., the September 1990, Jarrell "opinion." On appeal, Austin argues that by accepting underpayments from Doctors, Travelers effectively waived or is equitably estopped from claiming all unpaid premiums, not just those for the period between April, 1990, and September, 1990.
 
 
 18
 In order to establish a claim of equitable estoppel, Austin has the burden of proving that Travelers made a material misrepresentation or omission based on its actual or constructive knowledge of the facts with the intention that Doctors rely on that misrepresentation or omission. Further, Austin must show that Doctors in fact relied on Travelers' misrepresentation or omission and that Doctors had no knowledge of the true facts or no means of discovering the true facts. American Hardware Mutual Ins. Co. v. BIM, Inc., 885 F.2d 132, 138 (4th Cir.1989). Essential to Austin's waiver claim is proof of waiver and that Austin, the party seeking to assert this defense, relied on the waiver to its detriment. Insurance Co. of North America v. National Steel Service Ctr., Inc., 391 F.Supp. 512, 521 (N.D. W. Va.1975), aff'd, 529 F.2d 515 (4th Cir.1976); National Mutual Ins. Co. v. McMahon & Sons, Inc., 177 W. Va. 734, 739 (1987).
 
 
 19
 As to the period prior to April 4, 1990, the district court made a specific factual finding, for which there is adequate evidence, that Travelers was without knowledge of Pierce's incorrect quote until April 4, 1990. Travelers Ins. Co. v. Dallas Healthcare, Inc., slip op. at 11-12. Because Travelers was without knowledge of the incorrect quote, Austin's claim of estoppel must fail with respect to damages occurring prior to April 4, 1990. BIM, 885 F.2d at 138. With regard to the period after September, 1990, it was not clearly erroneous for the district court to conclude that there was neither waiver by Travelers nor--particularly in view of the fact that it was undisputed that after April, 1990, Doctors knew that it was paying an incorrect rate--any detrimental reliance on Travelers' asserted waiver by Doctors.
 
 
 20
 In a related argument, Austin claims that the trial court erred in failing to consider the fact that Travelers did not mitigate its damages. This argument is merely the converse of Austin's equitable estoppel claim. Accordingly, we find no error in the trial court's failure to address specifically the issue of mitigation. By addressing the defense of estoppel, the district court implicitly rejected the contention that Travelers was under a duty to mitigate any damages it suffered.[5] Moreover, the fact that Doctors knowingly contributed to the damages suffered by Travelers precludes a mitigation defense under West Virginia law. See Smithson v. U.S. Fidelity & Guaranty Co., 186 W. Va. 195, 206 (1991).
 
 
 21
 Finally, Austin claims that the district court improperly admitted parol evidence to alter the terms of insurance policy issued by Travelers. Of course, parol evidence may not be admitted to alter or amend the terms of an unambiguous contract. Tri-State Asphalt v. McDonough Co., 182 W. Va. 757, 761 (1990); Glenmark Assoc. v. Americare of W. Va., 179 W. Va. 632, 635 (1988); Holiday Plaza, Inc. v. First Fed. Sav. & Loan Ass'n of Clarksburg, 168 W. Va. 356, 359 (1981). However, nothing in the record reflects an attempt to alter the existing contractual language in the Travelers policy. By introducing evidence concerning the proper calculation of "family" health insurance rates, Travelers was not seeking to clarify an ambiguous term in the policy. Rather, this evidence was admitted as part of Travelers prima facie case, in order to prove that Pierce negligently misquoted the existing unambiguous, correct rate.
 
 
 22
 Indeed, although Austin asserts that the insurance policy is ambiguous, the record contains virtually no evidence supporting that claim. In fact, Austin's own employee, Jeff Jarrell, conceded not only that he "understood" the correct Travelers rate but that he "would think" that as a general matter, agents who worked in the area would also understand the rate.
 
 III.
 
 23
 For the reasons stated above, the order of the district court awarding damages to Travelers is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 Both Austin and Doctors are West Virginia corporations. Because the insurance policy was issued in West Virginia to a West Virginia corporation, the substantive law of West Virginia governs this case. Of course, with respect to procedural matters, federal law applies. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988)
 
 
 [2]
 Furthermore, we note that the trial judge in this case did not announce a decision prior to the submission of proposed findings and conclusions from both sides. In this important respect, the trial judge followed our recommended procedure in cases involving proposed findings of fact and conclusions of law. See Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 332 (4th Cir.1983), cert. denied, 466 U.S. 951 (1984)
 
 
 [3]
 On the question of proximate cause, Doctors' representatives testified that they could not remember soliciting Jarrell's opinion. However, there was also evidence--Jarrell's own notes--that Doctors did solicit his opinion, and that immediately after receiving that opinion, Doctors decided to discontinue the approach to Wisconsin Physicians Service and instead to continue paying Travelers the incorrect rates. Means, the executive secretary and employment coordinator at Doctors, who solicited Jarrell's opinion, testified that she was "not a decision maker" for Doctors. Bristol Messer, the chief executive officer of, and presumably a decision-maker for, Doctors, was not present during the conversation between Means and Jarrell, in which Jarrell's opinion was solicited, and did not remember it at a later deposition. Nevertheless, in view of Jarrell's contemporaneous note that Means "said that Mr. Messer wanted to know what 'my' opinion was on the letter they received from Travelers concerning their rates," we conclude that there was a sufficient factual basis for the district court to infer either that the substance of the MeansJarrell conversation was quickly communicated to Messer, who then decided that Doctors would continue with Travelers or that Messer told Means prior to the conversation that if Jarrell agreed with Doctors' own interpretation, Doctors would continue with Travelers. Accordingly, we cannot conclude that the finding of the district court as to proximate cause was clearly erroneous
 
 
 [4]
 Of course, Austin's claims as to ratification by Travelers during the period from April 4, 1990 through September 9, 1990, is moot because the district court did not assess any damages against Austin for this period. Travelers Ins. Co. v. Dallas Healthcare, Inc., slip op. at 12
 
 
 [5]
 On the issue of mitigation, Austin argues that Travelers could have avoided much of its loss simply by cancelling its policy with Doctors. However, as the district court concluded, while the policy allowed for cancellation in cases of nonpayment or underpayment, it did not require cancellation. Travelers Ins. Co. v. Dallas Healthcare, Inc., slip op. at 7